## WALDER v. UNITED STATES.
### No. 14654.

United States Court of Appeals,
Eighth Circuit.

Feb. 19, 1953.

Sam Walder, pro se.

Sam Wear, U. S. Atty., Kansas City, Mo., and William Aull, III, Asst. U. S. Atty., Lexington, Mo., for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant was indicted, tried, convicted and sentenced to a term of years in prison, and he appeals. At the close of the evidence he moved for a judgment of acquittal and after judgment was rendered he moved for a new trial. Both motions were overruled. In his brief he asks that the judgment be reversed and that he "be granted such other and further relief as may seem proper."

The indictment is in four counts. Each count charges a violation of the Anti-Narcotic Act, 26 U.S.C. § 2554(a). The statute reads:

"It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in section 2550(a) except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary."

Section 2550(a) mentions opium and any compound, salt, derivative or preparation thereof.

Count I of the indictment charged a sale and transfer of 5 grains of heroin, a derivative of opium, on January 10, 1951; count II charged a sale of 10 capsules containing 12 grains of heroin on April 11, 1951; count III charged a sale of 10 capsules containing 11½ grains of heroin on April 12, 1951; and count IV charged the sale of 8 capsules containing 10 grains of heroin on May 8, 1951, all within the jurisdiction of the court, and all in violation of the Act.

Appellant pleaded not guilty and was tried to a jury. He was represented at the trial by able counsel, but he appears in this court *pro se*. He seeks reversal upon two grounds: 1. That the court erred in admitting certain evidence, and 2. That the United States Attorney's argument to the

jury was improper and was calculated to mislead the jury.

█ The contentions of the appellant do not challenge the sufficiency of the evidence to support the verdict of the jury. The government introduced evidence, not criticised on this appeal, which abundantly supports the verdict of conviction on each of the four counts of the indictment. The first contention on this appeal relates to evidence introduced by the government in rebuttal for the purpose of impeaching the credibility of the appellant. When the government rested the appellant testified in his own behalf. In answer to questions propounded to him by his attorney, he testified that he had "never sold any narcotics to anyone in my life"; that he had never had any narcotics in his possession, other than what had been given to him by a physician for an ailment; that he had never handled or given any narcotics to anyone as a gift or in any other manner; and that he had never acted as a conduit for the purpose of handling what he knew to be a narcotic from one person to another.

On cross-examination in answer to questions by the district attorney the appellant repeated these denials. He then testified that in the month of February, 1950, he was living in Apartment 3 in an apartment house in Kansas City, and that he had seen Mr. Witt and Mr. Follmer, agents of the Bureau of Narcotics of Kansas City. He was then asked and over the objection of his counsel answered the following questions:

"Q. Do you recall going to your apartment with them on the evening of February 19th or early in the morning of February 20, 1950? A. Yes.

"Q. Now, when you arrived at that apartment * * *, I will ask you, Mr. Walder, whether or not you turned over to them 1 grain of heroin? A. I did not.

· "Q. Now I ask you if on that occasion prior to arriving you stated to these officers that should they find any narcotic drugs in this apartment, that they were your property and your wife, Freda, was in no way responsible for

any drugs which might be found? A. I don't recall any such conversation.

"Q. Do you deny that? A. I deny."

These questions were objected to by counsel for the appellant; and in a discussion of the question thus raised, not in the presence of the jury, it developed that on the occasion referred to in February, 1950, the appellant was arrested by the two officers who accompanied him to his apartment for the purpose of searching his premises for narcotics and that after their arrival at the apartment the appellant "to avoid tearing things up" voluntarily delivered to the officers one capsule containing 1.1 grains of heroin.

Subject to the same objection and to the same ruling, the appellant then denied that on that same evening he told the officers on the way to his apartment "that should they find any narcotic drugs there that the same were his property and that his wife was in no way responsible for any drugs which might be found there."

The court then said to counsel for the appellant: "If you hadn't * * * asked him whether or not he had ever had anything to do with narcotics or any connection with them, then the court would have been compelled under the law to sustain the objection * * * But you opened it up by asking whether or not he had ever had anything to do with narcotics and as a result of that answer 'No', then * * * it becomes competent to show that he did have something to do, that he did possess narcotics. I think you could show a prior sale of narcotics in order to impeach him as to that particular statement. It goes to his credibility * * *. The court will say to the jury that this testimony is not admitted for the purpose of showing the guilt of the defendant with respect to these particular sales * * * it is simply by way of impeachment as to the credibility of the witness." The court so instructed the jury at the time the evidence was admitted and again in his final instructions.

The court explained, not in the presence of the jury, that the appellant was indicted for the offense which he committed in 1950, and that when that case came on for

trial the evidence discovered by the narcotic agents by their going to appellant's apartment to make a search for narcotics without a search warrant was rejected by the court on the ground that it was obtained by an illegal search, and the indictment was dismissed and the appellant was discharged.

Counsel for the appellant then explained his position in the present case as follows: " * * * if that evidence was incompetent and inadmissible at that time to prove this man's guilt * * *, then that evidence is now at this time totally incompetent * * *, and it is again in violation of this man's constitutional rights to attempt to use evidence of that transaction for the purpose of impeachment in this case * * * "

In rebuttal officer Witt testified without further objection that on February 19th or the early morning of February 20, 1950, the appellant accompanied him and officer Follmer and two deputy sheriffs to appellant's residence and that on the way appellant told them that should they find any narcotic drugs they were his property and not his wife's, and that after they arrived at the residence appellant delivered to him one capsule of heroin containing 1.1 grains.

The appellant relies upon cases arising under the Fourth Amendment to the Constitution holding that evidence obtained during an illegal search is not admissible to prove the guilt of one charged with an offense under a law of the United States, citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; and Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. The application of the Fourth Amendment is more recently illustrated in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93. The appellant relies also on cases support-

ing the rule that evidence of the commission by a defendant of an offense similar to that for the alleged commission of which he is on trial is not admissible to prove his commission of the latter offense, such as Boyd v. United States, 142 U.S. 450, 12 S. Ct. 292, 35 L.Ed. 1077; and Gart v. United States, 8 Cir., 294 F. 66.

The cases cited and relied upon by the appellant are not in point here. In all of them the evidence in question was introduced for the purpose of supporting the government's charge in the indictment. That is not the case here. In the present case the evidence was introduced for the sole purpose of impeaching the credibility of the appellant, and the court was meticulous in protecting his rights by instructions limiting the consideration of the evidence to the one point for which it was admitted. In such a case the evidence is admissible. The ruling of the court under these circumstances is supported by numerous controlling authorities. See Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; United States v. Corrigan, 2 Cir., 168 F.2d 641; Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353, certiorari denied, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1622, rehearing denied, 329 U.S. 820, 67 S.Ct. 29, 91 L.Ed. 698; Ellis v. United States, 8 Cir., 138 F.2d 612. And see 23 C.J.S., Criminal Law, § 1032; also Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381.

■ In appellant's Supplemental Brief he complains that " * * * the United States Attorney in his closing argument to the Jury deliberately led the jury to believe that the defendant had served time in the penitentiary and erroneously made reference to a penitentiary record of defendant's which does not exist, and continuously referred to the defendant by the name of 'Mr. Big.' "

This criticism of the argument to the jury is without merit. On cross-examination appellant was asked: "Q. Will you state to this court and jury, Mr. Walder, whether or not you were sentenced to a term of 1 to 5 years for grand larceny in the state of Kansas?"

.After higgling and evading through four pages of the record and volunteering that he had served a term in the reformatory when he was a "kid", he was asked again:

"Q. Were you convicted of grand larceny? A. I imagine I am convicted. I am not familiar with the laws.

"Q. After the trial you served time, is that correct? A. Yes, sir.

"Q. From one to five years? A. Yes, sir."

The United States Attorney did nothing improper in referring to this record.

Appellant suggests further that the United States Attorney improperly referred to him as "Mr. Big" in argument to the jury. This occurred when the United States Attorney was commenting upon the evidence relating to the illicit handling of narcotics in Kansas City. The evidence was to the effect that there were two classes of dealers in the unlawful sale and distribution, of narcotics at the time of appellant's operations in the Kansas City territory. They were wholesalers and retailers. They were referred to among themselves as big dealers and pushers. Wholesalers or big dealers sold heroin to the pushers for $2 a capsule and they in turn sold to the addicts for $3 per capsule. Appellant was a wholesaler or big dealer. He sold to the "pushers", but after the first sale to a particular "pusher" he required the pusher to buy in quantities of not less than $50 worth at a time. It was in commenting on appellant's position in this matter that he was referred to as "Mr. Big", meaning a big dealer and not a pusher. No objection was made to the argument at the trial by appellant or by his able counsel, and we do not think it is a ground for reversal.

An examination of the whole record is convincing that the appellant had a fair trial and that the court carefully protected his rights throughout the proceedings.

Affirmed.

WOODROUGH, Circuit Judge (dissenting).

I am unable to concur because I think that the fruits of the illegal search of the appellant's home were erroneously received in evidence against him.