**Ronnie MATHIS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–806.**

Court of Criminal Appeals of Oklahoma.

Aug. 10, 1976.

**526**

Douglas W. Sanders, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

### MEMORANDUM OPINION

BLISS, Judge:

Appellant, Ronnie Mathis, hereinafter referred to as defendant, was charged conjointly with one Bruce Selby in the Latimer County District Court, Case No. CRF–75–26, for the offense of Shooting

With Intent to Kill in violation of 21 O.S. 1971, § 652. The defendant was tried but was convicted of the lesser included offense of Assault and Battery with a Dangerous Weapon in violation of 21 O.S.1971, § 645, and pursuant thereto his punishment was fixed by a jury at a term of imprisonment of five (5) years. From this judgment and sentence a timely appeal has been perfected to this Court.

The defendant does not challenge the sufficiency of the evidence to support the verdict of guilty and consequently only a brief factual summary of the evidence presented at trial will follow.

Jimmy Allen testified that on the 19th day of February, 1975, he and his wife had occasion to be at the Barl's Bar in Wilburton and that on that evening the defendant, LaWana Allen, the former wife of the witness, and Elmer Slater were also present and that an argument transpired. The authorities were summoned and Officer Melvin Holly responded. Shortly thereafter the witness proceeded home. He testified that approximately 9:30 P.M. on that evening a black Oldsmobile pulled into his driveway with the lights on and reving its motor. He testified he had seen the Oldsmobile previously that evening at which time it was driven by the defendant and LaWana Allen was accompanying him. He testified that he summoned the authorities whereafter Officer Holly arrived at his residence. Shortly after midnight the Oldsmobile again appeared and parked across the street and shortly thereafter a pickup truck arrived and Bruce Selby exited the pickup. He testified he heard a voice, which he identified to be similar to that of the defendant, shout to the occupants of the pickup "get out of here before it starts." He testified that he could identify the voice of the defendant as he had known the defendant for several years. After the pickup departed some ten to twelve shots were fired from the Oldsmobile at his residence and he and Officer Holly returned the fire with Holly firing his revolver some six times and he fired an

automatic shot gun some five times and he heard one of the shots hit the vehicle. He testified that Officer Holly related to him that he had apparently sustained a bullet injury in the leg. The Oldsmobile left and additional authorities were summoned and Officer Holly left with the other authorities.

Melvin Holly's testimony corroborated that of Jimmy Allen. He testified that upon leaving the Allen home with the other officers he had reason to believe the defendant and Selby were proceeding to LaWana's home and consequently they proceeded to this residence. He stated that upon arriving at the residence they observed the Oldsmobile and that the vehicle appeared to have been hit by a shot gun blast. He testified that from outside the vehicle he observed a .22 caliber rifle whereafter he announced his official character to the residence and received no response. After the arrival of additional officers they entered the residence and discovered the defendant lying on the bed bleeding and they found Bruce Selby in a closet. He testified the defendant and Selby were arrested and transported to jail and later taken to the hospital where they were treated for apparent wounds they had sustained. In court he identified various spent cartridges and pieces of lead found at the shooting scene and in the Oldsmobile.

Selby Stephens testified that he had occasion to accompany Officer Holly on the evening in question and he further testified that he transported the defendant and Selby to the hospital for treatment. At the hospital he observed what appeared to be a shot gun pellet removed from the prisoner's body and he identified in court State's Exhibit No. 4 as the pellet removed from Bruce Selby. He identified State's Exhibit No. 5 as the pellet removed from the defendant. He further related that he retained custody of the Exhibits from the time they were removed from Selby and the defendant until the preliminary hearing was conducted.

Neiantha Morgan testified that she was a Court Reporter at the preliminary hearing of the defendant and that State's Exhibits No. 1 through No. 5 had been in her possession since said hearing.

Laura Smith testified that on the evening in question she observed the defendant drving Roy Raxter's black Oldsmobile at approximately 8:30 P.M. Also at the bar on that evening she heard the defendand state "I'll buy the house a round, everybody drink up, cause we'll be in jail by morning." The State then rested. The defendant offered no testimony in his behalf.

■ The defendant's first assignment of error essentially alleges the trial court committed prejudicial and reversible error in admitting over the defendant's objection State's Exhibits No. 4 and No. 5. State's Exhibit No. 4 was purported to be a small piece of metal apparently a shot gun pellet, taken from the body of Bruce Selby. State's Exhibit No. 5 was purported to be a similar pellet taken from the finger of the defendant. The defendant contends said Exhibits were improperly identified and essentially the chain of custody of said Exhibits was not sufficiently proved by the State. The defendant thus argues said Exhibits were inadmissible and the trial court should have sustained the defendant's objections to the admission of said Exhibits.

The record reflects an evidentiary hearing at trial was conducted upon the admissibility of said Exhibits. Sheriff Stephens' testimony given during the hearing revealed that he transported Selby and the defendant following their arrest to the hospital for treatment as Selby was bleeding over the eye and the defendant was bleeding in the chest area, over one of his ears and one of his fingers was bleeding. His testimony further disclosed that he was present when the doctor removed the pellets from Selby and the defendant and that he observed the doctor place each pellet in a separate container or vial. He retained custody over the Exhibits until the prelimi-

nary hearing at which time the Exhibits were admitted into evidence and custody was thereafter attained by Neiantha Morgan.

This Court has repeatedly recognized the general rule governing admission of physical objects into evidence as was observed in *Calhoun v. State,* Okl.Cr., 406 P.2d 701 (1965), citing *Gouard v. State,* Okl.Cr., 335 P.2d 920 (1959), wherein the court noted:

"Before physical object . . . is admitted into evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, the lack of positive identification goes to the weight of such evidence rather than its admissibility."

The general rule in 22A C.J.S. Criminal Law § 709 states:

"To justify their admission, a proper foundation must be laid, and such articles must be identified as the articles they are purported to be, and shown to be connected with the crime or with the accused; however, such identification is not required to be positive, absolute, certain, or wholly unqualified, and where there is some evidence for this purpose, objections to its sufficiency go to the weight rather than to the admissibility of the articles in question."

Admittedly, some possibility exists that Sheriff Stephens could have mistaken State's Exhibit No. 5 for State's Exhibit No. 4 and vice versa, however, we are of the opinion that a sufficient foundation was laid to establish the admissibility of these Exhibits which certainly have the probative value of connecting the defendant with the crime charged. Therefore, under these circumstances we find the trial court was justified in admitting State's Exhibits No. 4 and No. 5 into evidence.

The defendant's final assignment of error alleges the trial court erred in not declaring a mistrial at the defendant's request following the testimony of Sheriff Stephens which constituted a "evidentiary harpoon." The pertinent parts of the transcript of the trial proceedings reflect:

"Q. Okay, what's the next thing that happened Sheriff?

A. When I got them boys in jail, they claimed that they had seen some stolen property out there and we got a search warrant and went back out there and picked up some stuff that they thought had been stolen.

MR. SANDERS:

I feel compelled to make a record at this point, Your Honor.

MR. SULLIVAN:

Your Honor, he asked the question and he got an answer.

THE COURT:

Go ahead and make your record Mr. Sanders.

MR. SANDERS:

In addition, I would like for the Court to admonish this attorney to cease from making any further statements in front of the jury and will at this time request and demand a mistrial. Counsel's words, quote, he asked for it and he got it". This jury assumes . . . .

THE COURT:

Don't make any further statments in front of the jury. If you want to make a record, make it.

MR. SANDERS:

Comes now, the defendant, Ronnie Mathis, and requests a mistrial in this matter based upon the obvious harpoon known in the law as an evidentiary harpoon, just made by this witness. In my cross examination, I had inquired of the witness as to what the proper sequence of events were, when suddenly the witness began stating, making statements relevant to another and separate felony action. This statement was made in the presence of the jury, that in addition thereto, the District Attorney made an improper remark which has result-

ed in the defendant, Mathis being totally unable to receive a fair and impartial trial by these jurors, for the reason that said jurors are now of the opinion, that they will be of the opinion that the defendant's attorney committed some legal error, when in truth and in fact, the evidentiary remark presented by this witness was totally unresponsive to the question propounded by counsel. For all these reasons, I respectfully move for a mistrial.

THE COURT:

The Court feels like the response by the witness was innocently made and was trying truthfully to answer the question you were seeking. It will be overruled. Allow exception. You may continue Mr. Sanders."

Defendant thus contends the statement relating to "some stolen property" relates to an obvious attempt to interject separate criminal activity of the defendant into the trial of the instant case.

The State contends the statement was inadvertently made without intent to prejudice defendant. The State thus contends that such a spontaneous response to such a direct question does not merit modification or reversal.

■ This Court has emphatically adhered to the rule that police officers should not, while on the witness stand, make voluntary statements prejudicial to the rights of the defendant on trial. See *Kutin v. State*, Okl.Cr., 430 P.2d 848 (1967). In *Kutin* the Court noted:

". . . officers of the law should be properly instructed as to what is, and what is not, competent evidence and be forbidden by their superiors from injecting incompetent and prejudicial testimony into evidence which results in reversals of convictions and defeats the ends of justice."

Further, when a testifying officer volunteers prejudicial information indicating other crimes such constitutes a "evidentiary harpoon". See *Sandersfield v. State*, Okl. Cr., 461 P.2d 1019 (1969). In the instant

case Stephens' testimony regarding "some stolen property out there" certainly by reasonable inference does inject some evidence of other crime. However, the place at which the observations of the stolen property allegedly were made was not the defendant's residence but that of LaWana Allen although the defendant was arrested at said residence. Also we further note that the jury found the defendant guilty of a lesser and included crime rather than the offense charged. It is to be noted no admonition was given the jury to disregard the reference to stolen property.

■ We are of the opinion that under the particular facts and circumstances of this case and pursuant to our authority under 22 O.S.1971, § 1066, the interests of justice dictate that the defendant's sentence of five (5) years imprisonment be modified to three (3) years imprisonment.

For the above and foregoing reasons the judgment and sentence appealed from, as modified, is, accordingly, AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.