UNITED STATES of America,
Plaintiff-Appellee,

v.

Wallace HOOKS, Defendant-Appellant.

No. 84–2709.

United States Court of Appeals,
Tenth Circuit.

Jan. 6, 1986.

Kenneth C. Watson, Oklahoma City, Okl., for defendant-appellant.

Frank Michael Ringer, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), W.D. of Okl., Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY and SEYMOUR, Circuit Judges, and BALDOCK, District Judge.*

McKAY, Circuit Judge.

Wallace Hooks appeals his conviction of possession with intent to distribute phencyclidine (PCP), a controlled substance. He challenges the sufficiency of the evidence and claims that certain remarks made by the prosecutor during closing arguments constitute plain error. Appellant also contends that the trial court's failure to exclude certain prejudicial testimony on its own motion requires reversal of his conviction.

## FACTUAL BACKGROUND

On July 28, 1984, at approximately 9:15 p.m., Officer McLerran of the Oklahoma City Police Department observed a speeding pickup truck that was changing lanes without signaling. Officer McLerran stopped the vehicle, and the sole occupant of the truck—later identified by Officer McLerran as appellant—got out of the truck and walked back to the police car. When Officer McLerran asked appellant for his driver's license, he told the officer that he did not have one. Officer McLerran then advised appellant that he was going to issue him several traffic citations and instructed him to sit in the police car. First, however, Officer McLerran frisked the appellant and, finding a checkbook in his pocket, handed it to his partner. In order to complete the traffic citation, Officer McLerran asked appellant to state his name. Appellant replied that his name was Wallace McConnell. However, Officer McLerran's partner had noticed that the name Wallace Hooks appeared on appel-

---

\* Honorable Bobby R. Baldock, United States District Judge for the District of New Mexico, sitting by designation.

lant's checkbook and asked appellant to explain the discrepancy. At this point, appellant told the officers that he had lied and that his name was, in fact, Wallace Hooks. Officer McLerran then placed appellant under arrest for "interfering with official process by giving false information."

In accordance with the police department's policy of impounding vehicles after the driver has been arrested, Officer McLerran approached the pickup truck to take an inventory of its contents. When he was three to four feet from the door of the truck, he noticed a strong odor coming from the open window on the driver's side, an odor he immediately associated with PCP. Once inside the truck, Officer McLerran noticed that the odor of PCP was stronger. On the front seat of the truck, Officer McLerran observed a bottle containing Everclear grain alcohol, and, on the floorboard, he found a bottle of whiskey. Behind the seat, concealed beneath some clothing, Officer McLerran found a quart jar containing a yellow liquid which he suspected was PCP. Officer McLerran immediately informed appellant that he was under arrest for possession of a controlled substance and advised him of his *Miranda* rights. Appellant stated that he did not own the truck and that he did not know anything about the quart jar behind the seat. Thereafter, Officer McLerran searched appellant, this time more thoroughly, and found a pocket knife and a plastic bag containing white powder in his pants pocket. Officer McLerran at first suspected that the plastic bag contained heroin but later determined that the white powder was actually bicarbonate of soda.

At trial, Officer McLerran testified about the events leading up to appellant's arrest for possession with intent to distribute a controlled substance. The government also presented the testimony of a Special Agent of the Drug Enforcement Administration, who stated that the quart jar found in the truck contained approximately twenty-two ounces of 81 percent pure PCP. He explained that the PCP had a street value of $10,000 and was at a level of concentra-

tion that would require dilution before it could be sold on the street. The agent also testified that PCP is usually sold in liquid form in quantities of one ounce or less and that it is ingested by placing a small amount on the end of a cigarette and then smoking the cigarette. According to the agent's testimony, the odor associated with PCP is "extremely nauseous," and exposure to the odor provokes "gagging." The agent testified that Everclear alcohol is commonly used to dilute pure PCP and that bicarbonate of soda is used to remove impurities from PCP.

Appellant presented six witnesses, several of whom testified that appellant did not own the truck but that he had borrowed it from a friend to move some furniture. According to the testimony, appellant had used the truck all day and returned it to the owner around 5:00 p.m. He then borrowed it again around 8:00 p.m. to move a freezer. One witness testified that he had helped the appellant move the freezer but did not notice any unusual odor while he was in the truck. Appellant's mother testified that the name Wallace McConnell appeared on her son's birth certificate but that she had never known him to use that name. Appellant's common-law wife testified that she had no knowledge of appellant ever having used PCP or any other hallucinogenic drugs. On cross-examination, she testified that the only time she had known appellant to use the name McConnell was for traffic tickets.

## SUFFICIENCY OF THE EVIDENCE

In evaluating the sufficiency of the evidence, we must view the evidence—both direct and circumstantial, together with all reasonable inferences to be drawn therefrom—in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982). A criminal conviction may be sustained on wholly circumstantial evidence. *E.g., United States v. Downen,* 496 F.2d 314, 318 (10th Cir.),

*cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). Relying upon *United States v. Owen,* 536 F.2d 340, 344 (10th Cir.1976), appellant argues that his conviction cannot be sustained because the evidence presented by the government was consistent with both innocence and guilt.

In *Corbin v. United States,* 253 F.2d 646 (10th Cir.1958), we observed that, in circumstantial evidence cases, the standard of reviewing criminal convictions had been modified to require that the appellate court find that the facts and circumstances were "inconsistent with any reasonable hypothesis of innocence." *Id.* at 649. We rejected this standard of review, however, noting that it was at odds with the Supreme Court's decision in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In *Holland,* the Court criticized an instruction in a circumstantial evidence case that the government's evidence must exclude every reasonable hypothesis of innocence:

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

348 U.S. at 140, 75 S.Ct. at 137. Although some courts took the view that *Holland* only applied to jury instructions, and not to the standard of reviewing criminal convictions, *e.g., Cuthbert v. United States,* 278 F.2d 220, 224–25 (5th Cir.1960), our decision in *Corbin* made clear that we viewed *Holland* as controlling and that we would no longer reverse criminal convictions on the ground that the evidence was consistent with a reasonable hypothesis of innocence. *See, e.g., United States v. Turner,* 421 F.2d 252, 252 (10th Cir.1970); *United States v.*

*Parrott,* 434 F.2d 294, 297 (10th Cir.1970), *cert. denied,* 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330 (1971); *Barton v. United States,* 407 F.2d 1155, 1158 (10th Cir.1969); *Early v. United States,* 394 F.2d 117, 118 (10th Cir.), *cert. denied,* 393 U.S. 1003, 89 S.Ct. 492, 21 L.Ed.2d 467 (1968).

Notwithstanding our rejection in *Corbin* of the "reasonable hypothesis of innocence" standard, and its repudiation by the Supreme Court, we have frequently stated in our opinions that a conviction cannot be based upon evidence which is consistent with both innocence and guilt. *E.g., United States v. Owen,* 536 F.2d 340, 344 (10th Cir.1976); *United States v. Ortiz,* 445 F.2d 1100, 1103 (10th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); *Lewis v. United States,* 420 F.2d 1089, 1089–90 (10th Cir.1970); *Brumbelow v. United States,* 323 F.2d 703, 705 (10th Cir.1963); *Tyler v. United States,* 323 F.2d 711, 712 (10th Cir.1963). The use of this language is unfortunate for it suggests that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence. Indeed, if there was any validity to this proposition after *Corbin,* it was flatly rejected by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There, in explaining the standard for weighing the constitutional sufficiency of the evidence, the Court stated:

> Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the Court has rejected in the past. *Holland v. United States,* 348 U.S. 121, 140 [75 S.Ct. 127, 137, 99 L.Ed. 150]. We decline to adopt it today.

443 U.S. at 326, 99 S.Ct. at 2792.

In contrast to the standard of review applied in civil actions, appellate courts may not sustain criminal convictions unless the proof offered at trial established the defendant's guilt beyond a reasonable

doubt. This is not to say, however, that the reviewing court should ask whether *it* believes that the evidence at trial was sufficient to establish guilt beyond a reasonable doubt. *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966). Rather, the appropriate inquiry is whether *a reasonable jury* could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. Thus, it is anomolous to suggest that the appellate court should evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. As the Ninth Circuit stated in *United States v. Nelson*, 419 F.2d 1237, 1245 (9th Cir.1969):

> [T]he impression left by appellate court opinions is that the "reasonable hypothesis" standard may lead to serious departures from the proper appellate role in evaluating the sufficiency of evidence. Courts following the rule exhibit a noticeable tendency to divide the evidence into separate lines of proof, and analyze and test each line of proof independently of others rather than considering the evidence as an interrelated whole. The sufficiency of the evidence is often tested against theoretical and speculative possibilities not fairly raised by the record, and inferences are sometimes considered which, though entirely possible or even probable, are drawn from evidence which the jury may have disbelieved.

In the event that our formulation of the standard for reviewing criminal convictions has resulted in such mischief, we take this opportunity to make clear that, regardless of the kind of evidence, direct or circumstantial, there is a single test that applies in reviewing the sufficiency of the evidence in criminal cases.[1] The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn there-

from—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

 In this case, the government was required to establish beyond a reasonable doubt that the defendant knowingly possessed a controlled substance with intent to distribute. 21 U.S.C. § 841(a)(1) (1982); *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983); *United States v. Freeze*, 707 F.2d 132, 135 (5th Cir.1983). Possession may be actual or constructive and may be proved by circumstantial evidence. *United States v. Kincade*, 714 F.2d 1064, 1066 (11th Cir.1983). For example, constructive possession may be established by proof that the defendant exercised dominion and control over the vehicle in which the controlled substance was concealed. *United States v. Moreno*, 649 F.2d 309, 312 (5th Cir.1981). The government, of course, must prove that the defendant *knowingly* possessed the controlled substance. Thus, proof of dominion or control, without the requisite showing of knowledge, is insufficient to sustain a conviction under 21 U.S.C. § 841(a)(1) (1982). *United States v. Freeze*, 707 F.2d at 136.

 Because the PCP in this case was concealed behind the seat of a vehicle that appellant did not own, his mere possession of the truck cannot, standing alone, sustain the jury's finding that appellant knowingly possessed PCP. The government argues, however, that appellant's apparent willingness to endure the noxious odor of PCP that was present in the truck gives rise to an inference that he knowingly possessed PCP. In view of the government's failure by direct evidence to establish appellant's familiarity with PCP, the mere presence of an odor in the truck does not, *by itself,* establish that the appellant knew there was PCP concealed in the truck. *But see United States v. Gonzalez*, 700 F.2d 196, 204

---

**1.** The test is the same, whether applied by the appellate court or by the trial court in ruling on a motion for judgment of acquittal. *E.g., Burks v. United States,* 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); *United States v.*

*Weed,* 689 F.2d 752, 756 (7th Cir.1982); *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

(5th Cir.1983) (proof that defendant recognized odor of heroin not necessary to sustain conviction where other evidence established "deliberate ignorance"); *United States v. Turner,* 668 F.2d 496, 497 (11th Cir.1982) (proof that defendant recognized the odor of marijuana not required to sustain conviction where odor permeated ship).

■ However, the jury properly could have considered this evidence of smell, together with other circumstantial evidence in the record, in finding that appellant had the requisite knowledge of PCP to support his conviction of possession. For instance, appellant's possession of bicarbonate of soda lends support to the jury's finding that appellant knowingly possessed PCP, in view of the DEA agent's testimony that bicarbonate of soda is used to purify PCP. Moreover, the jury could have inferred appellant's guilty knowledge from the undisputed testimony that appellant gave the police a false name. *Crone v. United States,* 411 F.2d 251, 254 (5th Cir.), *cert. denied,* 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed.2d 173 (1969) (use of fictitious name inferred defendant's knowledge that checks were stolen). The testimony also showed that, when the police stopped appellant, his eyes were bloodshot and his speech was slurred, yet the arresting officer did not detect an odor of alcohol on appellant's person. The jury could have concluded from this evidence that appellant was voluntarily under the influence of PCP and that he knew that the PCP was in the truck. The evidence also established that appellant walked back to the police car when he was stopped by the police. The jury could have inferred from this fact that appellant was attempting to conceal the noticeable odor that the arresting officer later smelled as he approached the truck. Moreover, the DEA agent testified that the PCP was worth $10,000. This fact also supports the jury's finding that appellant knowingly possessed the PCP, since it is unlikely that the owner of the truck, or anyone else, would have left such a valuable substance in the truck, especially a substance whose odor clearly revealed its location.

■ In evaluating the sufficiency of the evidence, it is proper for us to consider the collective inferences to be drawn from the evidence as a whole, rather than examining the evidence in bits and pieces. *United States v. Barnes,* 604 F.2d 121, 156 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Although each item of circumstantial evidence, viewed in isolation, might not be sufficient to sustain appellant's conviction, when the circumstantial evidence is considered in its totality, together with the collective inferences to be drawn therefrom, we are convinced that the evidence is sufficiently probative to sustain the jury's finding that appellant was aware that he was in possession of a controlled substance. Given our judgment on this issue, the large quantity of PCP contained in the truck is clearly sufficient to support a judgment that appellant intended to distribute PCP. *United States v. Gonzalez,* 700 F.2d 196, 204 (5th Cir.1983). Accordingly, we conclude that the evidence is legally sufficient to sustain appellant's conviction for possession of PCP with intent to distribute.

## PROSECUTORIAL MISCONDUCT

■ Appellant maintains that four improper remarks were made by the prosecutor during his closing argument, and that although no objection was interposed at trial, these remarks amount to plain error and require reversal of his conviction. Under the "plain error" inquiry, reversal is mandated only to correct " 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), and *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) ). This inquiry necessarily requires a careful review of the entire record to determine the question of possible prejudice.

■ The first remark that appellant argues is reversible error was made in response to the following statement by defense counsel during his closing argument to the jury:

Now Mr. Ringer would suggest to you that because the officer testified it was a pungent odor, that he knew. Well, I would suggest to you that if I were in a truck that had PCP, never having used PCP before or any other drug, I wouldn't know either. So I'm—I can put myself in Wallace Hooks' position because I would be sitting there, if fate would have it, the number of times I've moved or that I've used another person's vehicle.

Record, vol. 3, at 197. The Assistant United States Attorney began his rebuttal argument with the following statement:

Speaking of—well, facts come from the witness stand; argument comes from counsel. There are numerous, numerous times here where counsel has argued to you and asked you to assume facts which are not in evidence from the witness stand, giving you his experiences in state court of understanding things.

Record, vol. 3, at 200. Thereafter, the Assistant United States Attorney made the following statement, which appellant now argues amounts to a comment on his failure to testify, in violation of his fifth amendment privilege against self-incrimination. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965):

The next thing: When counsel assumed a fact not in evidence, he says, "I can tell you that never having used PCP or any other drug, that I don't know what the smell of PCP is," *and then he put himself in the place of his client.* He assumed facts not in evidence. There is no evidence of any of that.

Record, vol. 3, at 201 (emphasis added).

In determining whether these remarks constitute an impermissible comment on the accused's failure to testify, the test employed in this circuit is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify." *United States v. Barton,* 731 F.2d 669, 674 (10th Cir.1984) (quoting *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955)). The Supreme Court has recently reminded us that reviewing courts must examine the prosecutor's remarks in the context of the entire record to assess whether they constitute prejudicial error. *United States v. Young,* — U.S. —, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Thus, "to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *Id.* 105 S.Ct. at 1045.

Although it is difficult to draw a bright line separating vigorous advocacy from prosecutorial misconduct, it is clear that the prosecutor's remarks in this case, when viewed in the context of the entire record, were directed at what defense counsel had said during his closing argument, not at what appellant had failed to say by not testifying at trial. The prosecutor had already told the jury that, in his view, opposing counsel had assumed facts not in evidence, and although he might have chosen his words more carefully in illustrating this point, it is clear that his language was not "manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Barton, supra.* We therefore conclude that the prosecutor's remarks did not violate appellant's fifth amendment privilege against self-incrimination.

■ Appellant also contends that the following statement by the prosecutor, which he characterizes as an expression of the prosecutor's personal opinion on the evidence, constitutes plain error.

There should be no question in your mind that the defendant possessed phencyclidine. He knew it was in there. He had to know it was in there. It smelled to high heaven. There was no way he couldn't have known it was in there. That may be part of the reason that he

was weaving across the road at the times that he was before he saw the police officers, the fact that he knew it was in there; it was already affecting him or he wanted to weave across the road to create a ventilation in his truck to keep it from—to keep himself from being affected more by that.

Record, vol. 3, at 190–91. Due process prohibits a prosecutor from testifying to the jury during closing argument. The prosecutor, therefore, may not express his personal opinion regarding the evidence presented or the guilt of the accused. *United States v. Ainesworth*, 716 F.2d 769, 771 (10th Cir.1983). Here, however, the prosecutor did nothing more than argue to the jury that, on the basis of the government's evidence, the jury should find that appellant knowingly possessed PCP. He said nothing to suggest his personal opinion on the evidence presented or as to whether he personally believed appellant was guilty. Accordingly, we find that the prosecutor's argument was within permissible bounds and does not warrant reversal.

■ Appellant also maintains that it was plain error for the prosecutor to tell the jury during closing argument that appellant had "lied about his age—or lied about his name." Record, vol. 3, at 191. Appellant argues that this statement was improper in that it went beyond the evidence contained in the record. A close examination of the record reveals that Officer McLerran's testimony regarding whether the appellant had lied about his age was at best ambiguous and that the prosecutor's interpretation of that testimony was reasonable. Moreover, since the evidence was undisputed that the appellant *had* given the police a false name, any testimony establishing that appellant had also lied about his age would have been cumulative and without prejudicial effect. Furthermore, any prejudice that might have resulted from the prosecutor's statement was mitigated by his reminding the jury that

arguments of counsel are not to be considered as evidence.[2]

■ Additionally, appellant contends that the following statement by the prosecutor during closing argument "told the jury that Mr. Hooks had previous contacts with the police" and constitutes plain error:

He did not tell them the truth about his date of birth or his social security number, and why would he not do that? He didn't want to do that because he still had a chance at that point; that if the officers didn't know his name, Wallace Hooks, that he could have gone back in his car and driven off without them finding the PCP or phencyclidine that was in the back of the truck.

Record, vol. 3, at 191–92. We find appellant's argument on this point to be totally without merit, since defense counsel's cross-examination of Officer McLerran made clear to the jury that appellant did in fact have an arrest record:

Q. Now, you say you ran some information to determine the date of birth or determine something, and you found other traffic cases that he had had, right, or another traffic?

A. Other traffic tickets and stuff?

Q. Yes.

A. I'm not that sure. My partner did that. I was at a different place in the station when he was running through Unit 800.

Q. When you say arrest, that could mean a number of things. He could have been arrested for murder. That's not what you said.

A. I don't remember what his record looked like, no.

Q. Did you remember he had one? Did you even look at it?

A. Yes.

Record, vol. 3, at 128–29. A prosecutor may properly argue facts brought out on cross-examination, *Walder v. United States*, 201 F.2d 715, 717–18 (8th Cir.1953), *affirmed on other grounds*, 347 U.S. 62, 74

2. "Ladies and gentlemen, if I misstated ... the evidence in the case, I request that you recall it from your collective memory rather than what I say." Record, vol. 3, at 200.

S.Ct. 354, 98 L.Ed. 503 (1954), and appellant should not complain of error which he invited upon himself. *United States v. Riebold,* 557 F.2d 697, 708 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977).

## PREJUDICIAL TESTIMONY

■ Finally, appellant argues that it was plain error for the government to introduce without objection certain prejudicial testimony. Appellant refers to the introduction of this testimony as the "injection of evidentiary harpoons." [3]

■ The first testimony to which appellant objects is Officer McLerran's statement that appellant had refused to submit to a blood test to determine the presence of intoxicants in his body. Appellant relies on *McCullick v. State,* 682 P.2d 235 (Okl.Crim. App.1984), a case in which the Oklahoma Court of Criminal Appeals held that evidence of refusal to submit to a blood test is inadmissible in a trial for driving under the influence of alcohol (DUI). A close reading of that case, and the cases cited therein, makes clear that the Oklahoma court's holding was not based on constitutional principles, but rather on the court's interpretation of an Oklahoma statute granting persons arrested for DUI an absolute right to refuse to submit to a blood-alcohol test. "[N]either the statutes nor decisional law of the forum state control the admissibility of evidence in any phase of a federal criminal action." *United States v. Turner,* 497 F.2d 406, 407 (10th Cir.1974). Thus, appellant's reliance on *McMullick* is misplaced. Moreover, a constitutional challenge to the admissibility of refusal to submit to a blood test has been foreclosed by the Supreme Court's decision in *South Dakota v. Neville,* 459 U.S. 553, 564, 103 S.Ct. 916, 923,

74 L.Ed.2d 748 (1983), where the Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the fifth amendment privilege against self-incrimination.

■ Appellant next argues that the trial judge committed reversible error by permitting Officer McLerran to testify that appellant was carrying a pocket knife at the time of his arrest. He maintains that this testimony unfairly implied a criminal propensity. We find this argument to be totally without merit.

■ Appellant also asserts that the following testimony of Officer McLerran was prejudicial because it created the distinct impression that appellant had previous contact with the police:

Q. And then what did he say later about that date of birth and social security number?

A. If I remember right, he changed— gave us the one that matched up in our bureau of records which is our files on everybody that they have records on that's been registered through our department.

Q. Going to another matter, was PCP detectible on your clothing?

Record, vol. 3, at 125–26. As we have already noted, defense counsel's cross-examination of Officer McLarren made clear to the jury that appellant did in fact have an arrest record. In these circumstances, the reference to appellant being "registered" through the police department does not constitute plain error.

AFFIRMED.

BALDOCK, District Judge, specially concurring.

I concur in the result and the discussion contained in the majority opinion with the

---

**3.** An "evidentiary harpoon" is a metaphorical term of art that has been used by several state courts to describe the situation where a government witness, while testifying in a criminal case, deliberately offers inadmissible testimony with the purpose of prejudicing the defendant. *Pillow v. State,* 479 N.E.2d 1301, 1305 (Ind. 1985); *English v. State,* 481 N.E.2d 413, 415 (Ind.App.1985); *Bruner v. State,* 612 P.2d 1375, 1378 (Okl.Crim.1980); *Mathis v. State,* 553 P.2d 525, 528 (Okl.Crim.1976); *Sandersfield v. State,* 461 P.2d 1019, 1020 (Okl.Crim.1969); *State v. Suleski,* 67 Wash.2d 45, 406 P.2d 613, 617 (1965) (en banc). Without borrowing the lexicon of these state courts, we recognize that such testimony, if sufficiently prejudicial, may form the basis for reversible error. Where no objection is interposed at trial, however, reversal is only warranted upon a finding of plain error affecting substantial rights. Fed.R.Crim.P. 52(b).

following exception. In considering the government's position that an inference of knowledge can be drawn from appellant's willingness to tolerate the strong odor of liquid PCP in the truck, the majority opinion says:

> In view of the government's failure by direct evidence to establish appellant's familiarity with PCP, the mere presence of an odor in the truck does not, *by itself*, establish that appellant knew there was PCP concealed in the truck. (Citations omitted).

Majority Opinion at 1531. In my view, when the evidence is taken as a whole in the light most favorable to the government, appellant's familiarity with PCP was established. It does not matter whether the evidence was circumstantial or direct. 2 C. Wright, Fed.Prac. & Proc. § 467 (1982). Moreover, the presence of the strong odor of PCP supports an inference of knowledge which the jury is entitled to believe. *United States v. Liles*, 670 F.2d 989, 992 (11th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Robbins*, 629 F.2d 1105, 1106 (5th Cir.1980).