**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick J. NOTCH,**
**Defendant–Appellant.**

**No. 90–1172.**

United States Court of Appeals,
Tenth Circuit.

July 12, 1991.

Rick Budd (Benjamin Spitzer, with him on the briefs), of Budd and Spitzer, P.C., Denver, Colo., for defendant-appellant.

William R. Lucero, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Before McKAY and ANDERSON, Circuit Judges, and CHRISTENSEN[1], District Judge.

McKAY, Circuit Judge.

Patrick Notch appeals from a jury verdict convicting him on three counts of filing a false income tax return for 1983, 1984, and 1985 in violation of 26 U.S.C. § 7206(1) (1988). He also appeals his conviction on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (1988).

At trial, the government used the net worth method of proof to establish that defendant understated his income on his personal income tax returns. After the jury returned its verdict, the defendant filed a Motion for Judgment of Acquittal on the basis of sufficiency of the evidence. He also filed a Motion for New Trial and a Motion for Judgment Notwithstanding the Verdict. The district court denied the motions.

In this appeal, defendant attacks his conviction on three grounds, alleging that: (1) there was insufficient evidence to establish the net worth method of proof for 1983, 1984 and 1985; (2) the district court erred when it allowed the government to introduce evidence that permitted the jury to improperly speculate as to his personal expenses; and (3) the government incorrectly charged him with conspiracy to defraud the United States.

I.

The Internal Revenue Service began an investigation of defendant and his partner, Walter Burkey, in 1986. The investigation focused on a scheme by the defendant and Mr. Burkey in which they agreed to conceal and not report to the IRS money generated from six adult bookstores in the Denver, Colorado area. Eighty to ninety percent of the money came from customers viewing pornographic videos in private booths, also known as video arcades, located in the bookstores.

The financial relationship between defendant and Mr. Burkey began in 1974 when Mr. Burkey hired defendant to work as a part-time clerk in his adult bookstores. By 1976, Mr. Burkey, through his business entitled Burkey Management, owned four stores. He promoted defendant to general manager to run them.

The businesses were very profitable under defendant's direction. Burkey Management added a fifth adult bookstore. In 1983, Mr. Burkey and defendant entered into a number of business transactions as equal partners. They purchased a sixth store called the Ward Road Bookstore. They also purchased real estate in Missouri and on South Federal Street in Denver. Their partnership operated during 1981, 1982, and the first three months of 1983. They then liquidated the partnership and formed a corporation called Ward Road Bookstore, Inc., in which they were equal and sole shareholders. The corporation owned Ward Road Bookstore and the properties on South Federal Street and in Missouri.

During the period from 1976 to 1985, defendant was paid fifteen percent of the net profits from the adult bookstores as compensation for managing them. The six stores grossed approximately $20,000 per week from the video arcades. Mr. Burkey and defendant agreed they would not report these funds to the IRS. Testimony at trial showed that fifty percent of the arcade money was not reported. To hide the evidence of their income, Mr. Burkey and defendant used perforated accounting sheets on which the true amount of cash generated daily from the bookstores appeared on a bottom portion that was discarded, and another false figure was maintained as a record on the top portion. In addition, unreported income was placed in a safety deposit box. A third method to hide income was to falsify the total compensation to employees on their W-2 forms.

**1.** Honorable A. Sherman Christensen, United States Senior District Judge for the District of Utah, sitting by designation.

Because defendant's records were inadequate to accurately establish his income, the government used the net worth method of proof. The government's expert testified that defendant had understated his income on his personal income tax returns for 1983, 1984, and 1985 in the amounts of $4,582, $70,744, and $32,992 respectively. The likely source of the increase in defendant's net worth was cash generated from the video arcades.

## II.

■ In reviewing the district court's denial of defendant's Motion for Judgment of Acquittal, we must examine all the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government. *United States v. Hooks*, 780 F.2d 1526, 1529 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). We must then determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Bowie*, 892 F.2d 1494, 1497 (10th Cir.1990); *Hooks*, 780 F.2d at 1531. When direct evidence is lacking, a criminal conviction can be sustained solely on circumstantial evidence. *Hooks*, 780 F.2d at 1531.

■ The net worth method of reconstructing income relies on circumstantial evidence whereby the defendant's liabilities are subtracted from his assets to establish a starting net worth at a particular time, usually the beginning of a tax year. The same calculation is made at the end of the year and compared to the starting net worth to determine defendant's increase in net worth over that time. *See United States v. Terrell*, 754 F.2d 1139, 1144 (5th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 635 (1985). An increase or "bulge" greater than the increase in reported income for the corresponding tax year creates an inference of unreported income. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Under the net worth analysis the government must accurately establish defendant's opening net worth, identify a likely source of taxable income, and reasonably investigate any leads that suggest defendant properly reported his income. *United States v. Gomez–Soto*, 723 F.2d 649 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). We must closely scrutinize the net worth analysis due to "the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." *Holland*, 348 U.S. at 129, 75 S.Ct. at 132.

## A.

Defendant alleges several flaws in the government's net worth calculation, each of which concern the bookkeeping of Ward Road Bookstore, Inc. His first contention is that the evidence failed to accurately establish his liabilities. He argues that the government incorrectly allocated to him only fifty percent of a Loans Payable amount listed on the corporation's tax returns. The government did so because he and Mr. Burkey were equal partners, but defendant asserts that no evidence was presented establishing that he, in fact, owed only fifty percent of the money.[2]

Defendant also argues that the government's net worth calculation is flawed because the loan amounts were listed on the corporation's books for March 31 of 1984, 1985, and 1986 yet the government assigned these liabilities to December 31 of 1983, 1984, and 1985. He therefore con-

2. One of the line items in the liability section of the government's net worth computation was "Loans Payable: Ward Road Bookstore, Inc." in the following amounts:

| Year Ending | Amount |
| --- | --- |
| December 31, 1983 | $22,037.00 |
| December 31, 1984 | $37,646.00 |
| December 31, 1985 | $37,646.00 |

According to defendant, he may have owed all of the loans, which, if true, would reduce his net worth and result in an overstatement of income for 1983. He argues that it would also cast sufficient doubt on the net worth calculations for 1984 and 1985 so that a jury could not find him guilty beyond a reasonable doubt.

tends that the government failed to produce any evidence sufficient for the jury to determine the liability balances that defendant owed Ward Road Bookstore, Inc., on December 31 of 1983, 1984, and 1985.

■ The burden of persuading the jury beyond a reasonable doubt that defendant wilfully falsified his tax returns remains with the government at all times. *Holland*, 348 U.S. at 138, 75 S.Ct. at 136; *United States v. Scott*, 660 F.2d 1145, 1160 (7th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). In a net worth case, however, the government makes out a *prima facie* case when it has proved income greater than the income reported, the existence of a likely source of taxable income, and an effective negation of reasonable explanations by defendant inconsistent with guilt. *Holland*, 348 U.S. at 135–38, 75 S.Ct. at 135–37; *Scott*, 660 F.2d at 1160–61. It is defendant's burden to furnish leads that might explain the increases in net worth so the government can investigate these leads before trial. *United States v. Caswell*, 825 F.2d 1228, 1234 (8th Cir.1987); *Terrell*, 754 F.2d at 1146. Once the government has established its case, a defendant who elects to rely on the jury finding some reasonable doubt remains quiet at his peril. *Id.* at 138–39, 75 S.Ct. at 137; *Scott*, 660 F.2d at 1161; *United States v. Cramer*, 447 F.2d 210, 218 (2d Cir.1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 680, 30 L.Ed.2d 674 (1972).

■ Here, the government's thorough investigation made out a *prima facie* case. At trial, the government presented the testimony of defendant's partner, Mr. Burkey. He stated that the mortgage payments on three properties owned equally by defendant and himself (the Ward Road Bookstore and the properties on South Federal Street and in Missouri) were made by Ward Road Bookstore, Inc. In addition, one of defendant's witnesses, an accountant retained to prepare his tax returns, testified that the loan amounts listed on the corporation's tax returns represented mortgage payments on these properties. These sums were also included on the corporation's accounting worksheets as loans to shareholders, a group comprised of defendant and Mr. Burkey whose ownership interests were equal. The evidence also showed that they agreed not to report the money from the video arcades to the IRS.

■ Moreover, defendant did not put on evidence rebutting the government's evidence that the loans were not made during the calendar tax year. Nor did he attempt to rebut the showing that the amount he owed was fifty percent of the loans. Defendant's assertion that the net worth analysis is fatally flawed because of the possibility that the loans could have been made during a time other than the tax years charged, or the possibility that the loans might have been in a proportion different than the equity interests of defendant and Mr. Burkey, does not rise to the level of a reasonable explanation inconsistent with guilt that the government has the burden to negate. *See Holland*, 348 U.S. at 135, 75 S.Ct. at 135; *Scott*, 660 F.2d at 1160–61. The government is not required to disprove every possible source of nontaxable income. *Holland*, 348 U.S. at 138, 75 S.Ct. at 137; *United States v. Beasley*, 585 F.2d 796, 799 (5th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). Nor is the government required to document defendant's financial affairs to an absolute certainty before he can be convicted, particularly when the corporation itself did not keep records on the amounts loaned during the calendar tax year. *Holland*, 348 U.S. at 138, 75 S.Ct. at 136; *United States v. Dwoskin*, 644 F.2d 418 (5th Cir.1981). The net worth method of proof is itself an approximation.

Based on all the evidence, the jury could draw the conclusion that fifty percent of the loans were attributable to defendant. Likewise, the jury could infer that the loan amounts were attributable to loans made during the calendar tax years. Viewing the evidence in the light most favorable to the government, *Hooks*, 780 F.2d at 1529, we conclude that the evidence was sufficient to support defendant's conviction.

### B.

■ Defendant also argues that the loan amounts are inaccurate because the corporation's cash entry in its books was never reconciled with the amount of cash on deposit in its bank account. Defendant asserts that the loan amounts were adjusted to make these two amounts match and that the loan figures do not accurately reflect the amount owed by defendant.

Whether the loan figures were accurate is a factual determination for the jury. On one hand, the government presented evidence showing the figures on the corporation's returns and what these amounts were used for. Defendant cast doubt on their accuracy during cross-examination of the government's expert witness and during direct testimony of his own expert by emphasizing that the corporate cash account and the bank account had not been reconciled. The defendant did not, however, present evidence conclusively demonstrating that the loan figures were inaccurate. The government need not prove the increase in defendant's net worth to a mathematical certainty. *Holland*, 348 U.S. at 138, 75 S.Ct. at 137. It was permissible, therefore, for the jury to infer that the loan figures were accurate. The evidence was sufficient to support the jury's verdict.

### III.

■ Defendant's next argument is that the district court erred by allowing the government to introduce evidence that permitted the jury to improperly speculate as to his personal expenses. At trial, the government's expert witness testified that she did not take into consideration defendant's personal expenditures for food and clothing in arriving at her net worth computation. Such expenses are non-deductible and, if included in the net worth analysis, would increase the amount of total income defendant was charged with failing to report.

Defendant objected to this testimony because it allegedly invited the jury to speculate that his increase in net worth was greater than the amount the government was attempting to prove. The district court's decision to allow the government's expert to testify on this matter will not be overturned absent an abuse of discretion. *See LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987); *United States v. Cooper*, 733 F.2d 1360, 1366 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

Personal expenditures for food and clothing are usually included in the net worth calculation. *Holland*, 348 U.S. at 125, 75 S.Ct. at 130. The government's expert did not include food and clothing expenditures in her net worth analysis because she could not verify these figures. This conservative approach to the net worth computation made the analysis appear more credible. Although defendant characterizes the expert's testimony as an invitation to the jury to speculate that defendant's net worth was greater than the amount charged in the indictment, it can also be viewed as showing that the jury need not consider personal expenses in order to conclude that defendant understated his income. In these circumstances, we cannot say that the district court abused its discretion.

### IV.

■ Defendant's final argument is that the government charged him under the wrong provision of 18 U.S.C. § 371. The statute provides that it is unlawful for "two or more persons [to] conspire either to commit an offense against the United States, or to defraud the United States...." Count IV of the indictment charged defendant with conspiring to defraud the United States by impeding, impairing, obstructing, and defeating the lawful efforts of the IRS to ascertain, compute, assess, and collect income taxes. *See* 18 U.S.C. § 371. Defendant contends that he should have been charged under the offense provision of 18 U.S.C. § 371, not the fraud provision, because the evidence at trial was directed at proving that he had committed an "offense" against the United States, specifically, the offense of filing a false income tax return. He argues that he was wrongly charged and that his conviction must therefore be reversed.

Defendant principally relies on *United States v. Minarik*, 875 F.2d 1186 (6th Cir. 1989). In that case, the United States Court of Appeals for the Sixth Circuit held that the defendants could not be convicted when they had been indicted under the "defraud" clause of 18 U.S.C. § 371 but the evidence showed only that they conspired to commit the specific statutory offense found in 26 U.S.C. § 7206(4) (1988)—concealing assets upon which the IRS may impose a levy for taxes owed. The court in *Minarik* was particularly concerned that the broad language of the defraud provision prejudiced the defendant's ability to prepare for trial by allowing the prosecutor to indict without precisely setting forth the alleged crime. *Id.* at 1196; *United States v. Reynolds*, 919 F.2d 435, 439 (7th Cir. 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991); *see also McNally v. United States*, 483 U.S. 350, 361, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292 (1987) (refusing to interpret criminal fraud statute "in a manner that leaves its outer boundaries ambiguous"); *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (section 341 should not be broadly construed to criminalize activity not within its plain language).

Unlike the situation in *Minarik*, the facts of this case did not constitute *only* a conspiracy under the offense clause to violate 26 U.S.C. § 7206(1). *See United States v. Bilzerian*, 926 F.2d 1285, 1302 (2d Cir. 1991), *petition for cert. filed*, (May 22, 1991) (indictment under defraud clause proper where criminal activity broader than specific statutory prohibition). The object of the conspiracy went beyond filing false tax returns; it was to conceal taxable income in order to prevent the IRS from accurately ascertaining and collecting income taxes. Several methods were used so the IRS could not trace gains generated from the adult bookstores if it were to conduct a tax audit. One of these was the filing of false income tax returns. In addition, the defendant and Mr. Burkey concealed their income by using perforated accounting sheets on which the daily income from the video arcades was recorded and then discarded. Another device was

the payment of salaries and bonuses in cash. Defendant also purchased cashier's checks with cash in order to buy property and hide the source of his income.

Furthermore, the indictment did not prejudice defendant's ability to prepare for trial. It listed numerous overt acts, including those discussed above. Defendant cannot complain that he was unaware of the activities on which the government based the conspiracy charge. Under these circumstances, the district court did not err in denying defendant's Motion for Judgment of Acquittal on Count IV.

For the foregoing reasons, the district court's denial of defendant's Motion for Judgment of Acquittal is AFFIRMED.