Mary Margaret **BARTON**, aka Mary Margaret **West**, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 10093.

United States Court of Appeals Tenth Circuit.

Jan. 21, 1969.

**1156**

Larry F. Hobbs, Denver, Colo., for appellant.

Lawrence M. Henry, U. S. Atty., and Thomas C. Seawell, Asst. U. S. Atty., Denver, Colo., for appellee.

Before WARREN L. JONES,* Senior Circuit Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

---

* Of the Fifth Circuit, sitting by designation.

1. The Court entered an Order Of Judgment And Commitment For Examination And Study pursuant to 18 U.S.C. § 4208 (b) for a maximum commitment of two years, with provision for observation, study and report under the statute.

2. The pertinent portion of the application read as follows:

HOLLOWAY, Circuit Judge.

This appeal follows a jury trial, conviction, and judgment and commitment [1] for making a false loan application to a Federal credit union in violation of 18 U.S.C. § 1014. Prosecution evidence showed false statements in the application concerning indebtedness, employment and marital status. The jury rejected a defense of duress, finding appellant guilty. For reversal appellant contends that: (1) there was no proof of specific fraudulent intent to influence the credit union; (2) appellant's uncontroverted proof of coercion disproves such intent; and (3) the conviction may not stand since it is based on proof giving rise to competing speculative inferences.

From evidence which the jury might accept, the prosecution showed the following. Appellant submitted a written loan application to The Church of St. Mary's Federal Credit Union in Littleton, Colorado, in January, 1967. In response to its inquiry for a complete list of outstanding obligations, the application listed only two debts amounting to $250. It stated that applicant was employed at the Cherrelyn Manor nursing home as a practical nurse. It showed applicant's spouse as deceased. About four days later the $500 loan sought had been approved and appellant picked up her check, which was cashed.

The application concluded with a paragraph certifying that all information given was true and complete and was furnished to induce the credit union to grant the loan. It warned of criminal penalties for false statements on the application. Appellant signed immediately below the certificate and warning.[2] Con-

"I certify that all the information herein is True and Complete and is furnished for the purpose of inducing THE CHURCH OF ST. MARY'S FEDERAL CREDIT UNION to grant me this loan for the purpose stated. (False or fraudulent statements on a loan application to a Federal Credit Union are now a crime). Persons convicted of such crimes shall be fined not more than $5,000 or imprisoned for not more than two years,

trary to statements on the application, the proof showed that applicant was married; that she and her husband had obtained an additional unlisted loan from another credit union for $700 in November, 1966, which debt remained due on the date the St. Mary's application was made; that she and her husband also had arranged another $300 unlisted loan from a third credit union in November, 1966, which also remained outstanding; and that appellant had stopped working at the nursing home several days prior to the date of the application.

Appellant admitted making the application and did not deny the falsity of such information on it, but claimed that her actions were coerced by her husband. She testified concerning having been shot once by him, and of threats of physical harm to her and her children. She said he told her he would kill her if she did not make out the application as she did. Her proof was that he was outside the credit union when the application was turned in, and that he picked up the check with her and later took the proceeds when it was cashed.

██ Appellant's first contention for reversal is that there was no specific proof of intent to defraud the credit union. However, her testimony concerning the application was that she did not " * * * know what they act on, but it was filled out for a loan." The application was obviously essential in obtaining the loan. Furthermore, the direct statements on the application and the circumstances amply supported a finding of fraudulent intent, as a reasonable inference of fact. Indeed fraud is often not susceptible of direct proof and must be determined from circumstantial evidence and conduct of the parties. Wall v. United States, 384 F.2d 758 (10th Cir. 1967); Swallow v. United States, 307 F.2d 81

(10th Cir. 1968), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); United States v. Metcalf, 388 F.2d 440, 443 (4th Cir. 1968); and see Koscove v. Commissioner of Internal Revenue, 225 F.2d 85, 87 (10th Cir. 1955).

██ Appellant's second assertion is that her proof of coercion was uncontroverted and negates any inference of fraudulent intent. Her testimony entitled her to have the theory submitted to the jury, but the District Court did so under a proper instruction which is unquestioned. The charge correctly submitted the issue whether there was coercion of such an immediate nature as to induce a well-grounded apprehension of death or serious bodily injury, and whether there was reasonable opportunity to avoid committing the offense, without such consequences. Shannon v. United States, 76 F.2d 490 (10th Cir. 1935). Such a question of fact is for the jury to determine by weighing the evidence. See Lucas v. United States, 355 F.2d 245 (10th Cir. 1966), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966), and Martinez v. United States, 300 F.2d 9 (10th Cir. 1962). And it was for the jury to decide to what extent, if any, appellant's testimony as a vitally interested witness in her own behalf was to be accepted. Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895); Williams v. United States, 371 F.2d 141, 144 (10th Cir. 1967); Wheeler v. United States, 80 F.2d 678 (5th Cir. 1935). The anachronistic presumption of coercion by the husband is also mentioned. However, there was no objection to the instruction submitting the issue, and the contention lacks present Federal support. See United States v. Dege, 364 U.S. 51, 80 S.Ct. 1589, 4 L.Ed.2d 1563 (1960); Kivette v. United States, 230 F.2d 749 (5th Cir. 1956); and Conyer v.

or both. Upon discovery of such false or fraudulent statements, the Federal Credit Union MUST report both to the FBI and to the bureau of Federal Credit Unions). Signature of Applicant (signed)
Mary Margaret Barton Date

COMPLETE INFORMATION WILL EXPEDITE PROCESSING—INCOMPLETE APPLICATIONS CANNOT BE CONSIDERED BY OUR CREDIT COMMITTEE."

**1158**

United States, 80 F.2d 292 (6th Cir. 1935).

■■ Appellant's remaining proposition is that the proof contained competing speculative inferences and may not sustain the conviction. We find that this is not a case where the circumstantial proof is "too full of gaps to be probative," as in United States v. Silverman, 248 F. 2d 671, 686 (2d Cir. 1957), cert. denied, 355 U.S. 942, 78 S.Ct. 427, 2 L.Ed.2d 422 (1958), relied on by appellant. Circumstantial evidence need not conclusively exclude every other reasonable hypothesis, nor negative all possibilities, except guilt. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Early v. United States, 394 F.2d 117 (10th Cir. 1968); Wall v. United States, supra. Under all the facts and circumstances shown, the inference of criminal intent was reasonable and may sustain the conviction.

We find that none of appellant's contentions calls for reversal. The record reveals a fair trial, and no reversible error. The judgment is affirmed.