**UNITED STATES of America, Appellee,**

v.

**Roland HENRY, Appellant.**

**No. 72–1346.**

United States Court of Appeals, Tenth Circuit.

Nov. 10, 1972.

Mark C. Meiering, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Leon Taylor, Albuquerque, N. M., for appellant.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Henry appeals from a conviction on eight counts of an indictment charging him with possession with intent to distribute prohibited narcotic substances in violation of 21 U.S.C. § 841(a)(1) (1970). His main contentions are that the evidence is insufficient to establish that the narcotics were possessed with intent to distribute and that the decision of this court in United States v. Ortiz, 445 F.2d 1100 (10th Cir.), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d

545 (1971), should be reexamined and limited or overruled.[1]

■ Without further discussion we adhere to the principle of the *Ortiz* case and hold that the evidence here is sufficient to sustain a proof of intent to distribute all of the prohibited narcotics named in the indictment.

In the early part of October 1971, Henry left Washington, D. C., with a prostitute, traveling by train to Miami, Florida, with a stop at Richmond, Virginia. The couple then proceeded to Los Angeles, California, and from there to Las Vegas, Nevada. In the latter part of October Henry, using the name of Stevenson, purchased a Winnebago motor home in Las Vegas for which he paid $15,000 or $16,000 in cash. Immediately after the purchase the couple left to drive to Phoenix, Arizona, where they purportedly met "Ray," an acquaintance and customer of Henry's female companion.

Ostensibly destined for New Orleans, Louisiana, the party of three drove to Gallup, New Mexico. where difficulties developed and "Ray" was ousted. Henry and his companion then proceeded on to Albuquerque, New Mexico. Henry, while driving the motor home on the streets of Albuquerque, collided with a motorcycle. It was not a serious accident and the city policeman permitted Henry to drive away without a traffic citation after a settlement was made with the motorcycle owner. Within a few minutes thereafter Henry's vehicle collided with two parked automobiles and the same officer who investigated the previous accident was called to the scene of the second collision. Upon arrival the officer found the Winnebago in a vacant lot. Its motor was still running. A quantity of money was lying on the steps of the vehicle and some was blowing about the neighborhood. The door of the vehicle was open and its contents in disarray. Henry had disappeared. A large amount of money was observed on the floor of the motor home. The total amount of cash recovered in and around the vehicle exceeded $19,000. A powder-like substance that had spilled from two overturned wooden canisters was in view on the floor of the vehicle. The police recovered this material, which was found to be heroin and cocaine. The quantity was sufficient to make approximately 65,000 average dose street quality capsules of heroin and 5,700 doses of speedball, a heroin-cocaine mixture. There was testimony that the value of the capsules was $10 each. The police officers also found varying quantities of methadone, demerol and marijuana. Henry was apprehended about three hours later with more than $1,100 in cash in his possession. The total amount of cash recovered from Henry's motor home and the surrounding area, including that found on his person, was more than $20,000. At the time of his arrest Henry was wearing high-heeled boots, the heels of which had been hollowed out and were found to contain a quantity of heroin, demerol and methadone. There was no direct evidence of actual sale or other distribution of the narcotics.

Henry's defense was that he had no knowledge that the narcotics were in his motor home or in the heels of his boots, which he stated were given to him by "Ray." He testified that the canisters were brought to the motor home by "Ray" and two of his companions. He maintained that for unknown reasons "Ray" and his companions, whom he says he saw just prior to the second collision, were determined to do him bodily harm, which accounted for his sudden disappearance from his motor home. Except from Henry's statements, "Ray" and his associates were never identified.

1. The *Ortiz* case held that the quantity of drugs found in possession of a person could be sufficient to establish the "purpose to sell, deliver or otherwise dispose of drugs in contravention of the criminal statute" in cases where there was no other evidence of intent to distribute or dispense a controlled substance as defined in the statute. 445 F.2d at 1105.

He explained that the large sum of money in his possession was earned in pandering for his female companion. He admits that he was the owner in possession and control of the vehicle and that the narcotics were found therein. Under these conditions it may be inferred that as owner and possessor of the motor vehicle he had knowledge and control of the narcotics contained therein with power of disposal. United States v. Mallory, 460 F.2d 243 (10th Cir.), cert. denied, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); cf. Amaya v. United States, 373 F.2d 197 (10th Cir. 1967); Williams v. United States, 418 F.2d 159 (9th Cir. 1969), aff'd on other grounds, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

Considering all the circumstances of this case, including Henry's fantastic explanation, the only reasonable conclusion is that Henry, a non user of narcotics, maintained a mobile narcotics dispensary with the intention of selling and distributing narcotics in his possession at wholesale or retail during his travels across the country. The evidence indicates that he was quite successful in his efforts.

▮ The evidence supporting guilt may be entirely circumstantial. United States v. Ebey, 424 F.2d 376 (10th Cir. 1970); United States v. Harris, 140 U.S. App.D.C. 270, 435 F.2d 74 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971). Circumstantial evidence may be accorded the same weight as direct evidence. Moffitt v. United States, 154 F.2d 402 (10th Cir.), cert. denied, 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625 (1946); United States v. Glasser, 443 F.2d 994 (2d Cir.), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971). The circumstantial evidence required to support a verdict need not conclusively exclude every other reasonable hypothesis and it need not negative all possibilities except guilt. Bailey v. United States, 410 F.2d 1209 (10th Cir.), cert. denied, Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969); Barton v. United States, 407 F.2d 1155 (10th Cir. 1969); Early v. United States, 394 F.2d 117 (10th Cir.), cert. denied, 393 U.S. 1003, 89 S.Ct. 492, 21 L.Ed.2d 467 (1968); Golubin v. United States, 393 F.2d 590 (10th Cir.), cert denied, 393 U.S. 831, 89 S.Ct. 100, 21 L.Ed.2d 102 (1968).

Affirmed.