UNITED STATES of America,
Plaintiff–Appellee,

v.

Bill Lee SCOTT, Defendant–Appellant.

No. 89–2011.

United States Court of Appeals,
Tenth Circuit.

April 20, 1990.

Larry Gomez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Paul J. Kennedy, Albuquerque, N.M., for defendant-appellant.

Before SEYMOUR and BALDOCK, Circuit Judges, and SEAY,* District Judge.

SEAY, District Judge.

Appellant, Bill Lee Scott, was found guilty by a jury and convicted of one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and one count of manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2.[1] Scott appeals his convictions contending that he was denied a fair trial when the district court refused to instruct the jury on the defense of coercion.[2] We disagree, and therefore affirm the judgment of the district court.

I.

Between the middle of August 1987, and the early part of January 1988, Scott made approximately six trips to Scientific Chemical, a chemical supply company in Humble, Texas. Scott made these trips at the request of codefendant Mark Morrow.[3] These trips resulted in Scott purchasing

---

\* Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

1. Scott was acquitted of one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

2. We note that Scott personally filed a request for appointment on new counsel to replace his

attorney, Paul J. Kennedy, for alleged misrepresentation, misconduct, and neglect on the part of Mr. Kennedy. Our review of the record reveals that Mr. Kennedy quite adequately presented the issues by way of briefing and that he presented a capable oral argument.

3. At the time of trial, Morrow had not been apprehended.

various quantities of precursor chemicals and laboratory paraphernalia from Scientific Chemical. Some trips resulted in Scott taking possession of the items purchased, other trips resulted in the items being shipped to designated points to be picked up and delivered at a future date. These chemicals and laboratory items were purchased to supply methamphetamine laboratories operated by Morrow in New Mexico with the assistance of Silas Rivera and codefendants George Tannehill, Jerry Stokes, and Robert Stokes.

Scott first became acquainted with Morrow when Morrow helped him move from Portales, New Mexico, to Truth or Consequences, New Mexico, in late July or early August 1987. See rec., Vol. III, at 352. Shortly thereafter, Morrow became aware that Scott was going to Houston, Texas, to sell some mercury and Morrow asked Scott if he could pick up some items from Scientific Chemical. Id. at 352–55. Scott made the trip to Scientific Chemical and purchased the items Morrow requested. Id. at 357. Scott subsequently made approximately five other trips to Scientific Chemical at Morrow's request to purchase various quantities of precursor chemicals and assorted labware. Rec., Vol. II, at 62, 66–70, 74, and 83–90. During the course of one trip on August 31, 1987, Scott was stopped by Drug Enforcement Administration agents after he had purchased chemicals from Scientific Chemical. Id. at 18–20. The agents seized the chemicals Scott had purchased as well as $10,800 in U.S. currency and a fully loaded .38 Smith and Wesson. Id. at 22–24 and 29–31. Scott was not arrested at that time. Id. at 15–47. Scott, however, was subsequently indicted along with the codefendants after the seizure of large quantities of methamphetamine and precursor chemicals from a laboratory site in Portales in January 1988.

At trial Scott claimed that his purchase of the chemicals and labware on behalf of Morrow was the result of a well-established fear that Morrow would kill him or members of his family if he did not act as Morrow had directed. Scott further claimed that he did not have any reasonable opportunity to escape the harm threatened by Morrow. To support this defense of coercion Scott testified on his own behalf as to the nature and circumstances of the threats. Scott testified that approximately one month after the August 31, 1987, trip Morrow called him at his home in Truth or Consequences and talked him into a meeting in Houston to "get that straightened out". Rec., Vol. III, at 366. It was Scott's contention that Morrow might not have believed that the money and chemicals had been seized and that Morrow might have thought that he had merely kept the money. Id. at 366–68.

After the trip to Houston and Scientific Chemical to confirm Scott's story about the seizure of the chemicals and cash, Morrow contacted Scott at Scott's daughter's house in Portales to have Scott make another trip to Scientific Chemical to make another purchase. Id. at 371. After Scott declined to make another trip, Morrow responded by stating that Scott would not want something to happen to his daughter or her house. Id. Scott thereafter made the trip for Morrow. Id. at 372.

Approximately one week later, Morrow again came by Scott's daughter's house and wanted Scott to make another trip. Id. At some point during this discussion they decided to go for a ride in separate vehicles. Id. at 372–73. After travelling some distance, they both stopped their vehicles and pulled off to the side of the road. Id. Morrow pulled out a machine gun and two banana clips and emptied the clips at bottles and rocks. Id. at 373. Morrow stated "you wouldn't want to be in front of that thing would you?" and "you wouldn't want any of your family in front of that, would you?" Id. Scott responded negatively to Morrow's statements and thereafter made another trip to Scientific Chemical for Morrow. Id. On another occasion, Scott testified that Morrow threatened him by stating that he had better haul the chemicals if he knew what was good for him. Id. at 414.

Scott testified that Morrow not only knew his adult daughter living in Portales, but that he knew his wife and another daughter who were living in Truth or Con-

sequences and that Morrow had been to the residence in Truth or Consequences. *Id.* Scott testified that he made these trips for Morrow because he feared for the safety of his family in light of the confrontations he had with Morrow. *Id.* at 374. Scott stated he had no doubt that Morrow would have carried out his threats. *Id.* Scott was aware of information linking Morrow to various murders. *Id.* at 419. Scott further testified that he did not go to the police with any of this information concerning Morrow because he had gone to them before on other matters and they did nothing. *Id.* Further, Scott believed that Morrow had been paying a DEA agent in Lubbock, Texas, for information regarding investigations. *Id.* at 378–79.

On cross-examination Scott testified that all of Morrow's threats were verbal, *Id.* at 418; that he saw Morrow only a few times between August 1987 and January 1988, *Id.* at 416; that he had an acquaintance by the name of Bill King who was a retired California Highway Patrolman living in Truth or Consequences, *Id.* at 390; and that he could have found a law enforcement official to whom he could have reported the actions of Morrow, *Id.* at 421.

## II.

A coercion or duress defense requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm. *Shannon v. United States*, 76 F.2d 490, 493 (10th Cir.1935); *Barton v. United States*, 407 F.2d 1155, 1157 (10th Cir.1969); *United States v. Boomer*, 571 F.2d 543, 545 (10th Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 411 (1978); *United States v. Contento–Pachon*, 723 F.2d 691, 693 (9th Cir. 1984). Scott proffered a coercion instruction to the district court in conformity with the above elements. Scott, citing *Barton* and *Contento–Pachon*, contended that the testimony before the court concerning coercion was sufficient to raise an issue for the jury and that a coercion instruction should

be given. The district court found that Scott had failed to meet his threshold burden as to all three elements of a coercion defense. Accordingly, the district court refused to give an instruction on the defense of coercion.

Scott contends that the district court committed reversible error by substituting its judgment as to the weight of his coercion defense rather than allowing the jury to decide the issue. Scott maintains that he presented sufficient evidence to place in issue the defense of coercion and that it was error for the district court to usurp the role of the jury in weighing the evidence. We disagree and find that the district court acted properly in requiring Scott to satisfy a threshold showing of a coercion defense, and in finding the evidence insufficient to warrant the giving of a coercion instruction. In doing so, we find the evidence clearly lacking as to the third element for a coercion defense—absence of any reasonable opportunity to escape the threatened harm.

Only after a defendant has properly raised a coercion defense is he entitled to an instruction requiring the prosecution to prove beyond a reasonable doubt that he was not acting under coercion when he performed the act or acts charged. *United States v. Falcon*, 766 F.2d 1469, 1477 (10th Cir.1985) (citing *United States v. Bailey*, 444 U.S. 394, 412–13, 100 S.Ct. 624, 635–36, 62 L.Ed.2d 575 (1980)). The evidence introduced must be sufficient as to *all* elements of the coercion defense before the court will instruct the jury as to such defense. *Bailey*, 444 U.S. at 415, 100 S.Ct. at 637. If the evidence is lacking as to any element of the coercion defense the trial court may properly disallow the defense as a matter of law and refuse to instruct the jury as to coercion. *Id.* at 415–16, 100 S.Ct. at 637–38. Consequently, a defendant who fails to present sufficient evidence to raise a triable issue of fact concerning the absence of any reasonable opportunity to escape the threatened harm is not entitled to an instruction on the defense of coercion. *See Shannon*, 76 F.2d at 493 (refusal to give coercion instruction proper where evidence

established that defendants had full opportunity to cease their participation in the crime and seek assistance from law enforcement officials); *United States v. Charmley,* 764 F.2d 675, 676–77 (9th Cir. 1985) (failure to submit coercion defense to jury not error where defendant failed to demonstrate the absence of any reasonable opportunity to escape under circumstances where he was not under restraint or surveillance at the time of the alleged coercion).

The evidence in this case as to Scott's ability to escape the threatened harm wholly failed to approach the level necessary for the giving of a coercion instruction. Scott's involvement with Morrow covered a period of time in excess of one hundred twenty-five days. Scott's personal contact with Morrow was extremely limited during this time. Scott had countless opportunities to contact law enforcement authorities or escape the perceived threats by Morrow during this time. Scott made no attempt to contact law enforcement officials regarding Morrow's activities. In fact, Scott even failed to take advantage of his acquaintance, King, a retired law enforcement official, to seek his assistance in connection with Morrow's threats and activities. Scott's failure to avail himself of the readily accessible alternative of contacting law enforcement officials is persuasive evidence of the hollow nature of Scott's claimed coercion defense. *See United States v. Gant,* 691 F.2d 1159, 1163 (5th Cir.1982) (defendant failed to establish an inability to escape threatened harm when he failed to avail himself of the simple remedy of calling the police). Clearly, the record establishes that Scott had at his disposal a reasonable legal alternative to undertaking the acts on behalf of Morrow.

Also, this case is unlike the situations that existed in *Contento–Pachon* and *Barton,* cases relied upon by Scott which warranted instructions on the defense of coercion. In *Contento–Pachon,* a possession with intent to distribute case under § 841(a)(1), the defendant was in frequent contact with the person making the threats

and was informed that he would be under constant surveillance throughout his activities. The Ninth Circuit in *Contento–Pachon,* noting defendant's fear of corrupt police in Bogota, Colombia, found that the defendant had met his burden as to the escapability issue. Here, the record establishes nothing more than an amorphous belief by Scott that police would not act upon information he would provide them. This belief that police officials were indifferent to defendant's requests was neither substantiated by the evidence nor defined as to its scope and coverage. In fact, Scott testified that on one occasion the police responded to his call and took a statement from him regarding an altercation he had with a former business associate. Rec., Vol. III, at 433–35. In *Barton,* a false loan application case, the defendant's husband was the person making the threats and he initially accompanied her to the credit union while she made the application and later, when she picked up the check. In contrast to the husband's physical presence in *Barton,* Morrow did not accompany Scott when he made the purchases nor was there any evidence that Scott was under surveillance by Morrow.[4] In fact, Scott's contact with Morrow was limited and he admitted he saw Morrow only a few times during the course of his involvement on behalf of Morrow between August 1987 and January 1988. Based on all of these circumstances, the district court was correct in finding that Scott had failed to establish that he had no reasonable opportunity to escape the threatened harm by Morrow.

### III.

In conclusion, we find that Scott failed to present sufficient evidence to establish that he had no reasonable opportunity to escape the harm threatened by Morrow. Accordingly, the district court properly refused to instruct the jury as to the defense of coercion. We affirm the judgment of the district court.

---

**4.** Scott's activities, however, were under surveillance by law enforcement officials. *See* Rec., Vol. II, at 190, 194 and Rec., Vol. III, at 226–27, 234–39.