**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TONY S. FRANCIS,

Defendant-Appellant.

No. 00-1429

(D.C. No. 98-CR-224-D)

(D. Colorado)

---

**ORDER AND JUDGMENT** *

---

Janine Yunker, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney (Richard T. Spriggs, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **HENRY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **ROGERS** , Senior District Judge. **

---

*This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Richard D. Rogers, United States Senior District Judge for the District of Kansas, sitting by designation.

-1-

Tony Francis appeals his conviction and sentence for violation of 18 U.S.C. § 1791(a)(2) (possession of escape paraphernalia in prison). Mr. Francis asserts that the district court erred in (1) instructing the jury that the prosecution needed to disprove only any one of the elements of the duress defense in order for the jury to reject that defense; (2) failing to direct a verdict of acquittal on the escape paraphernalia charge, given that the jury invoked the duress defense in order to acquit on another count, violation of 18 U.S.C. § 751(a) (attempted escape); and (3) failing to grant a reduction in offense level for acceptance of responsibility, pursuant to § 3E1.1 of the United States Sentencing Guidelines. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm both the conviction and the sentence.

## I. BACKGROUND

Following his escape from prison, the television show "America's Most Wanted" incorrectly described Mr. Francis as a leader of the Aryan Brotherhood, a prison gang preaching white supremacy. Once recaptured, Mr. Francis found himself housed in the federal penitentiary in Florence, Colorado; Mr. Francis developed anxiety about his incarceration in this prison for at least two reasons. First, Mr. Francis feared the reaction of African-American prisoners because at least some of those prisoners had, in all likelihood, heard the claim of Aryan

Brotherhood membership made by "America's Most Wanted." Second, Mr. Francis feared the reaction of members of the Aryan Brotherhood because, in reality, he was not a member of that prison gang.

In 1997, prison authorities became concerned about growing racial tension in the Florence penitentiary; beginning on September 3, 1997, prison authorities "locked down" the penitentiary for ten days. Rec. vol. XI, at 483 (testimony of Mark Gaytan). Immediately after prison authorities lifted the lock-down, three African-American inmates threatened Mr. Francis. The inmates approached Mr. Francis, told him that they had seen him on "America's Most Wanted," and offered a warning to the effect that: "When the shit jumps off, you know what time it is" – i.e., a race war was brewing and Mr. Francis was a target. Rec. vol. XV, at 1294-95 (testimony of Mr. Francis); see also Rec. vol. XIV, at 1209 (testimony of Mr. Francis).

Mr. Francis declined to seek the aid of the prison authorities. According to Mr. Francis, seeking such assistance would have labeled him a snitch and thereby placed him in further danger. Additionally, again according to Mr. Francis, because the special housing units were far from free from violence, placement in protective custody would also have proven of limited benefit. In short, Mr. Francis argues that consultation with prison officials was not a reasonable alternative.

Mr. Francis concluded, instead, that his only option was to escape. Mr. Francis thus began to make plans for an escape – including, with the help of his friend and co-defendant Robert Haney,[1] obtaining a variety of escape paraphernalia. On September 26, 1997 – approximately two weeks after the initial threat – Mr. Francis was shown a "kite" (a note) in which an inmate commented that Mr. Francis was still considered a target. Id. vol. XIV, at 1170 (testimony of Joseph McGee). This threat provided renewed impetus for the escape attempt.

On the night of October 3, 1997, Mr. Francis and Mr. Haney gathered the collected escape paraphernalia and hid in the prison yard. As they hid, however, Mr. Haney endeavored to convince Mr. Francis that an escape attempt was imprudent; Mr. Haney argued, in effect: "[T]he best possible solution would be to get caught trying to escape, thereby getting placed into disciplinary segregation without having to report the death threats to prison officials." Aplt's Br. at 14; see, e.g., id. vol. XV, at 1425-27 (testimony of Mr. Haney). Mr. Francis ultimately agreed. After two hours of strewing the yard with the escape paraphernalia, the two inmates were finally caught.

The United States charged Mr. Francis with (1) violation of 18 U.S.C. §

---

[1] While Mr. Francis and Mr. Haney were tried jointly, we have considered and decided Mr. Haney's appeal separately. See United States v. Haney, No. 00-1421, — F.3d —, 2002 WL — (10th Cir. 2002).

1791(a)(2) (possession of escape paraphernalia in prison) and (2) violation of 18 U.S.C. § 751(a) (attempted escape).  The jury convicted Mr. Francis of possessing escape paraphernalia but acquitted Mr. Francis of attempting to escape.  The jury premised the attempted escape acquittal on an express finding of duress.  <u>See</u> Rec. vol. I, doc. 218 (verdict form).

## II.  DISCUSSION

### A.    Disproving Duress

Mr. Francis first insists that the district court erred in failing to require the government to disprove every element of the duress defense; the district court instead instructed the jury that, if the government proved, beyond a reasonable doubt, the absence of any one of the three elements of duress, the jury must reject that defense.  We review de novo the propriety of particular jury instructions.  <u>See</u> <u>United States v. Wolny</u>, 133 F.3d 758, 765 (10th Cir. 1998) ("We review the jury instructions de novo to determine whether, as a whole, they adequately apprised the jury of the issues and the governing law.").  Finding no error in the district court's jury instruction, we reject Mr. Francis' argument.

The duress defense requires:

1) A threat of immediate infliction, upon the defendant, of death or bodily harm;

2) The defendant's well-grounded fear that the threat will be

carried out; AND

3) The defendant's lack of a reasonable opportunity to otherwise avert the threatened harm.

See United States v. Glass, 128 F.3d 1398, 1409 (10th Cir. 1997) (listing the necessary elements of the duress defense); United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990) (same). Because the three elements of the duress defense are joined by the conjunction "and" rather than the disjunction "or," we conclude that, as a matter of the most elementary logic, the district court acted correctly in instructing the jury that the government's disproof, beyond a reasonable doubt, of any single element of the duress defense necessarily would preclude application of that defense. See United States v. Toney, 27 F.3d 1245, 1248, 1252 (7th Cir. 1994) ("Once the defendant has made a preliminary showing and the judge has found that a [duress] instruction is warranted, the burden switches to the government to prove the absence of [duress]. The government may do so by disproving beyond a reasonable doubt *any* of the elements of [duress].") (emphasis added); United States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992) ("The government can overcome [the defendant's invocation of the duress defense] . . . by showing that no threat occurred, or that the defendant's fear was unreasonable, *or* that the defendant had an opportunity to escape but did not exercise it.") (emphasis added); United States v. Mitchell, 725 F.2d 832, 836 (2d

Cir. 1983) ("[I]n federal criminal trials[,] the Government's burden in disproving at least *one* element of duress should be proof beyond a reasonable doubt.") (emphasis added).

**B.     Motion for Acquittal**

Mr. Francis next insists that because the jury, in regard to the charge of attempted escape, acquitted on the basis of the duress defense, the court necessarily should have granted a directed verdict as to possession of escape paraphernalia.  Neither logic nor the law, however, dictates such a result.

We review de novo the denial of a motion for judgment of acquittal.  See United States v. Austin, 231 F.3d 1278, 1283 (10th Cir. 2000).  In so doing, we "view[] the evidence in the light most favorable to the government in [order to] determin[e] if there is substantial evidence from which a jury could [have found] the defendant guilty beyond a reasonable doubt." Id. at 1283.  We will reverse only where "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wacker, 72 F.3d 1453, 1462-63 (10th Cir. 1996).

Here, the government presented evidence by which a rational jury could have applied the duress defense to the attempted escape while declining to apply that defense to the possession of escape paraphernalia.  As noted above, the

duress defense requires, among other elements:

> 2) The defendant's well-grounded fear that the threat will be carried out

See United States v. Glass, 128 F.3d 1398, 1409 (10th Cir. 1997); United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990). This second element contains, then, two components: (a) the defendant must actually possess a fear that the threat will be carried out and (b) that fear must be well-grounded. Cf. Rec. vol. I, doc. 219, at instruction 34 (jury instructions) (describing the second element of the duress defense as requiring "possess[ion of] a well-grounded fear that the threat would be carried out") (emphasis added). Here, the jury could have concluded that, immediately following the first threat, Mr. Francis did not actually possess a fear that the threat would be carried out. Accordingly, the jury could have declined to apply the duress defense to Mr. Francis' possession of escape paraphernalia (because the second element remained unsatisfied), while still applying the duress defense to the attempted escape (because, at this later date, the jury may have concluded that, particularly in light of the renewed threats, Mr. Francis now actually possessed a fear that the threats would be executed). Since a rational jury could have applied the duress defense to Mr. Francis' benefit as to the charged attempted escape while simultaneously convicting Mr. Francis of possessing escape paraphernalia, the district court committed no error in declining

to grant Mr. Francis' motion for acquittal.

## C.    Acceptance of Responsibility

Finally, Mr. Francis insists that the district court misapplied United States Sentencing Guideline § 3E1.1(a); § 3E1.1(a) provides for a two-level decrease in offense level where the defendant "clearly demonstrates acceptance of responsibility." Mr. Francis insists that the district court made a mistake of law in failing to realize that the court maintained discretion to grant a § 3E1.1(a) reduction even where Mr. Francis asserted the affirmative defense of duress rather than plead guilty to the offense of possession of escape paraphernalia.

"We review the district court's interpretation and application of the sentencing guidelines de novo, and review the court's factual findings for clear error." United States v. McAlpine, 32 F.3d 484, 487-88 (10th Cir. 1994). Mr. Francis' claim contests the district court's awareness and application of correctly interpreted law; Mr. Francis' claim is thus subject to de novo review. See id. at 487-88.

Section 3E1.1(a) directs the sentencing court to "decrease the offense level by two levels" if "the defendant clearly demonstrates acceptance of responsibility for his offense." Application Note 2 to § 3E1.1 explains:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential

factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

Here, Mr. Francis did put the government to its burden of proof by declining to plead guilty; Mr. Francis insisted on proceeding to trial. However, as the Guideline Commentary makes clear, Mr. Francis remained eligible, at the discretion of the district court, for the § 3E1.1(a) reduction. See also United States v. Garcia, 182 F.3d 1165, 1172 (10th Cir. 1999) (holding that "a § 3E1.1 reduction is not per se unavailable just because the defendant [chose] to go to trial solely on an [affirmative] defense.").

We conclude that the record adequately demonstrates the district court's awareness of this discretion. At the joint sentencing hearing, counsel for Mr. Francis' co-defendant read from the Commentary to § 3E1.1(a): "'Conviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction.'" Rec. vol. XIX, at 19 (Sentencing Hr'g, dated Dec. 28, 2000) (quoting U.S.S.G. § 3E1.1 cmt. n.2). The court clearly understood, itself

reiterating: "'In rare situations, a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.'" Id. at 22 (quoting U.S.S.G. § 3E1.1 cmt. n.2). The court specifically noted: "[T]his application [U.S.S.G. § 3E1.1 cmt. n.2] doesn't limit the availability of acceptance of responsibility to only someone who's challenging the constitutionality [of the statute charged]." Rec. vol. XIX, at 14-15 (Sentencing Hr'g, dated Dec. 28, 2000). The government responded: "No, it doesn't, your Honor. It doesn't." Id. at 15.

The district court proceeded to question counsel regarding application of the reduction, particularly inquiring as to pretrial statements and conduct. See, e.g., Rec. vol. XIX, at 15-22 (Sentencing Hr'g, dated Dec. 28, 2000) ("What pretrial statements and conduct would support the fact that acceptance of responsibility is appropriate here?"); cf. U.S.S.G. § 3E1.1 cmt. n.2 (specifically directing that, where a defendant proceeds to trial, "a determination that [the] defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."). The district court concluded: "So in looking at this, I don't believe this is a rare situation contemplated by the [G]uidelines where when someone goes to trial with a duress defense . . . they've accepted responsibility within the meaning of the [G]uidelines." Rec. vol. XIX, at 22-23 (Sentencing Hr'g, dated Dec. 28, 2000). The record provides ample evidence that the district

court understood the court's power to grant the acceptance of responsibility reduction in offense level, weighed the appropriate factors in considering exercise of that discretion, and concluded, simply, and in proper exercise of the court's discretion, that, on the facts presented, Mr. Francis should not benefit from that reduction.  Cf. United States v. Urcino-Sotello, 269 F.3d 1195, 1196-97 (10th Cir. 2001) (concluding that a district court adequately recognized that court's complete discretion over a particular sentencing matter even where the district court observed, incorrectly, "I believe that my discretion is very limited.").

### III.  CONCLUSION

For the reasons set forth above, we AFFIRM Mr. Francis' conviction and sentence.

Entered for the Court,


Robert H. Henry
Circuit Judge