FILED
United States Court of Appeals
Tenth Circuit

July 28, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

KIM DAVIS BECKSTROM,

Defendant–Appellant.

No. 10-4108

Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:07-CR-00089-TC-1)

Deirdre A. Gorman, Deirdre A. Gorman, P.C., Ogden, Utah, for the Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Carlie Christensen, United States Attorney, with her on the briefs), Office of the United States Attorney, District of Utah, Salt Lake City, Utah, for the Plaintiff-Appellee.

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Kim Davis Beckstrom was convicted of possession of fifty grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Because he had two prior felony drug convictions, Beckstrom was sentenced to life in prison under the mandatory sentencing provision of § 841(b)(1)(A). On appeal, Beckstrom challenges both his conviction and sentence. He argues the district court improperly denied him the opportunity to present a duress defense, erred in treating his two prior felony convictions as separate criminal episodes sufficient to qualify under § 841(b)(1)(A), and unconstitutionally increased his maximum sentence based on facts never found by a jury.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm. Beckstrom was properly denied the opportunity to pursue a duress defense because he failed to proffer evidence showing he lacked a reasonable opportunity to escape the threatened harm. As a general matter, the opportunity to seek the assistance of law enforcement will suffice as a reasonable alternative. A defendant who contends that police would have been unwilling or unable to help, but does not provide specific factual bases to conclude contacting law enforcement would be futile, falls short of meeting his evidentiary burden.

We further conclude that the district court was correct to treat Beckstrom's two prior drug felonies as arising from separate criminal episodes. Beckstrom had prior convictions for continuing criminal enterprise ("CCE") and possession of dangerous drugs for sale. The conduct forming the basis of the possession charge was one of three predicate offenses required to establish the CCE conviction. We hold that two prior

convictions will subject a defendant to a mandatory life term under § 841(b)(1)(A) if the second conviction requires proof of: (1) a criminal act separate from the acts supporting the first conviction, (2) which occurs at a distinct time from the acts supporting the first conviction, and (3) which occurs after the defendant had a meaningful opportunity to discontinue his unlawful drug-related activity. We reject Beckstrom's constitutional challenge to § 841 because, as he concedes, it is foreclosed by Supreme Court precedent.

## I

On September 11, 2007, a confidential informant (the "CI") introduced Beckstrom to undercover agent Craig Warr. Warr was posing as the CI's cousin from Idaho who was interested in purchasing methamphetamine. Beckstrom and Warr exchanged phone numbers and agreed to meet again. Two day later, after trading phone calls, Warr met Beckstrom outside of the auto body shop where Beckstrom worked. Beckstrom sold Warr one pound of methamphetamine in exchange for $7,000 and Warr's promise to pay another $7,000 once he sold the drugs. The pound was later determined to contain 93.6 grams of pure methamphetamine.

Suspecting that Beckstrom's supplier was in the vehicle, law enforcement officers followed a vehicle that left the auto body shop shortly after the drug deal. The driver, "Dam" Montoya, was stopped and eventually arrested, but the $7,000 Warr gave to Beckstrom was never recovered.

Warr and Beckstrom later arranged another meeting, with Warr promising to bring the remaining $7,000. Beckstrom was arrested when he attempted to meet Warr. An

ensuing search of the auto body shop where Beckstrom worked revealed plastic bags, a digital scale, and a chemical commonly used as "cut" in the manufacturing of methamphetamine.

Following his arrest, Beckstrom waived his Miranda rights and admitted to police that he had sold Warr a pound of methamphetamine. He was charged in federal court on a single count of possession of fifty grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The government also filed an information pursuant to 21 U.S.C. § 851(a)(1) notifying Beckstrom that he could be subject to an increased sentence based on two prior convictions: an Arizona state conviction for possession of dangerous drugs for sale and a federal CCE conviction.

Before trial, Beckstrom filed proposed jury instructions which included an instruction on a duress defense. In response, the government filed a motion in limine seeking to exclude evidence regarding duress, arguing that Beckstrom could not show duress as a matter of law. The district court held a hearing on the motion at which Beckstrom agreed to proffer his duress evidence. According to the proffer, Beckstrom introduced a long-time acquaintance to his suppliers, Montoya and a man known as "Chino." After the acquaintance fell into debt with the suppliers, they held Beckstrom responsible. Beckstrom claimed Montoya threatened to kill him and his family unless he agreed to sell methamphetamine to pay off the debt. Granting the government's motion, the district court held that Beckstrom's proffer was legally insufficient to show he lacked a reasonable opportunity to escape the threatened harm.

The case proceeded to trial. A jury found Beckstrom guilty of distributing fifty grams or more of methamphetamine. Based on the two prior convictions noted supra, the government sought to enhance Beckstrom's sentence under 21 U.S.C. § 841(b)(1)(A). Beckstrom opposed the enhancement, arguing that the two offenses upon which the government relied were part of a single criminal episode, and that the court could not rely on the convictions to increase his sentence because the jury did not make a finding that Beckstrom had been previously convicted. The district court rejected both arguments. Applying § 841(b)(1)(A), the court sentenced him to a mandatory life sentence. Beckstrom timely appealed.

## II

Beckstrom raises three issues on appeal. He argues: (1) the district court abused its discretion in precluding a duress defense; (2) his two prior convictions were insufficient to qualify under § 841(b)(1)(A) because they constituted a single criminal episode; and (3) his mandatory life sentence under § 841(b)(1)(A) is unconstitutional because it rests on facts that were never found by a jury.

## A

"A criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law." United States v. Haney, 318 F.3d 1161, 1163 (10th Cir. 2003) (citation omitted). In reviewing whether a proffer was sufficient to establish an affirmative defense, this circuit "respect[s] the trial judge's role as gatekeeper" and thus reviews "the denial of a duress defense for abuse of

-5-

discretion." United States v. Portillo-Vega, 478 F.3d 1194, 1197 (10th Cir. 2007) (quotation omitted). But see United States v. Patton, 451 F.3d 615, 637 (10th Cir. 2006) (recognizing "that other circuits use de novo review for this essentially legal question" (italics omitted)).

Defendants bear the burden of proving duress at trial by a preponderance of the evidence. Portillo-Vega, 478 F.3d at 1197. "A coercion or duress defense requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990). In evaluating the defendant's proffer, a trial court should evaluate the evidence in a manner favorable to the defendant. See United States v. Al-Rekabi, 454 F.3d 1113, 1123 (10th Cir. 2006).

We agree with the district court that Beckstrom failed to proffer evidence sufficient to satisfy the third prong of the duress defense. This case is markedly similar to Scott, in which the defendant sought a duress defense based on threats from a codefendant. 901 F.2d at 872-73. Scott claimed that the codefendant had threatened to kill him or his family members unless he took part in a methamphetamine manufacturing conspiracy. Id. We affirmed the district court's refusal to instruct the jury on duress, because Scott, during his months-long involvement with the codefendant, "had countless opportunities to contact law enforcement authorities or escape the perceived threats." Id. at 874. Having "made no attempt to contact law enforcement officials," we concluded,

-6-

Scott did not present evidence sufficient to warrant a duress instruction.  Id.

Beckstrom contends that by relying on Scott the district court failed to appreciate the severity of the threat posed by Montoya and his associates.  He argues that Scott is inapposite because "the new generation of Mexican drug cartel members" is far more dangerous than the codefendant in Scott.  Beckstrom points to Montoya's employment of undocumented immigrants who are difficult to track and his claim that Montoya introduced him to former victims of coercion, "characters who had things like bullet wounds in their heads [or] fingers cut off."

But allegations of Montoya's dangerousness do not establish that Beckstrom lacked a reasonable opportunity to escape.  The ability to contact law enforcement will generally constitute a reasonable alternative to illegal activity.  See Scott, 901 F.2d at 874; see also United States v. Bailey, 444 U.S. 394, 410 n.8 (1980) (noting a case in which "a person acting under a threat of death to his relatives was denied defense of duress where he committed the crime even though he had an opportunity to contact the police"); United States v. Sawyer, 558 F.3d 705, 712 (7th Cir. 2009) (rejecting duress defense because defendant "did not present evidence that she never had the chance to contact the police").  There is no doubt Beckstrom had such an opportunity here.  Although Montoya was present at Beckstrom's place of employment when the September 13 drug deal occurred, Beckstrom claimed that Montoya had been threatening him "from the beginning of September."  He does not claim that Montoya prevented him from reaching out to police during the entire two-week span.

Instead, Beckstrom argues that police would have been unable to protect him and his family from Montoya.  A defendant may pursue a duress defense by showing that the alternative of contacting law enforcement was illusory or futile.  United States v. Gant, 691 F.2d 1159, 1164 (5th Cir. 1982).  But Beckstrom did not proffer any specific reasons to doubt that the law enforcement alternative was viable.  He simply alleges in general terms that police would have been ineffective or unwilling to protect him.  Such generalized statements fall well short of satisfying a defendant's burden.  See id. (rejecting an argument that contacting police would have been futile based on slow police response on a single occasion).

To accept Beckstrom's argument would allow him to seek a license to sell methamphetamine over a lengthy period of time based on nothing more than conclusory allegations that police would be unable or unwilling to help him.  Because Beckstrom had numerous opportunities to seek the aid of law enforcement, and because Beckstrom failed to provide any specific reasons to doubt the efficacy of seeking police help,[1] the district court correctly denied him the opportunity to present a duress defense.

**B**

Beckstrom also argues that the convictions upon which the government relied to

---

[1] On appeal, Beckstrom notes that police were unable to recover the $7,000 Warr used to purchase the methamphetamine.  He did not argue below that this failure demonstrated that law enforcement would be unable to protect him.  We generally do not review issues raised for the first time on appeal.  See Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007).  In any event, a single instance of vanishing buy money does not support the conclusion that it would have been unreasonable to seek police assistance.

impose a mandatory life sentence were insufficient under 21 U.S.C. § 841(b)(1)(A). We review de novo whether prior convictions satisfy § 841(b)(1)(A). United States v. Harris, 369 F.3d 1157, 1167 (10th Cir. 2004).

Section 841(b)(1)(A) imposes a mandatory life sentence for any individual convicted under § 841(a) "after two or more prior convictions for a felony drug offense have become final." § 841(b)(1)(A). Our circuit, like all others to have considered the issue, requires that the two convictions used to enhance a sentence pursuant to § 841(b)(1)(A) arise from separate "criminal episodes." United States v. Pace, 981 F.2d 1123, 1132 (10th Cir. 1992) abrogated on other grounds as recognized in, United States v. Bell, 154 F.3d 1205, 1209-10 (10th Cir. 1998); see also United States v. Powell, 404 F.3d 678, 682 (2d Cir. 2005); United States v. De Jesus Mateo, 373 F.3d 70, 74 (1st Cir. 2004); United States v. Gray, 152 F.3d 816, 821 (8th Cir. 1998); United States v. Barr, 130 F.3d 711, 712 (5th Cir. 1997); United States v. Rice, 43 F.3d 601, 605 (11th Cir. 1995); United States v. Garcia, 32 F.3d 1017, 1018 (7th Cir. 1994); United States v. Liquori, 5 F.3d 435, 437 (9th Cir. 1993); United States v. Hughes, 924 F.2d 1354, 1360-61 (6th Cir. 1991); United States v. Blackwood, 913 F.2d 139, 146 (4th Cir. 1990).

Whether two acts constitute "separate criminal episodes" is not always self-evident. For example, two qualifying convictions, one for conspiracy to distribute drugs and one for the substantive offense underlying the conspiracy conviction would present a difficult case. See, e.g., United States v. Hazel, 1994 WL 642198, at *3 (4th Cir. Nov. 15, 1994) (unpublished) (affirming mandatory life sentence based on convictions for: (1)

-9-

conspiracy to distribute heroin between May 1, 1968 and January 8, 1971; and (2) distributing heroin on January 8, 1971). A conspiracy and an underlying substantive offense can be viewed as "separate," to the extent that "[c]onspiracy is a crime separate from the substantive violation." Pace, 981 F.2d at 1132. But insofar as a defendant can be convicted of both a one-day conspiracy to distribute drugs and the actual distribution of drugs that same day, see, e.g., United States v. Cardenas, 105 F. App'x 985, 986 (10th Cir. 2004) (unpublished), such convictions do not obviously arise from separate "episodes." Fortunately, the case law clarifies the matter by setting forth three requirements that must be met before courts will treat a second conviction as arising from a separate criminal episode.

First, the second conviction must arise from a criminal act distinct from the acts supporting the first conviction. See Pace, 981 F.2d at 1132 (the dispositive inquiry is whether "the prior offenses constitute separate criminal episodes or a single act of criminality" (emphasis added)). Second, the two criminal episodes supporting the mandatory life sentence under § 841(b)(1)(A) must have "occurred at distinct times." Id. (quotation omitted). Third, and perhaps most helpfully for our analysis, we look to whether a defendant had an "opportunity to discontinue his involvement in unlawful drug-related activity" to determine whether criminal episodes are distinct. Hughes, 924 F.2d at 1362. Taken together, this three-part rule comports with Congress' intent to target recidivism. "In the structure of [§ 841's] mandatory enhancement provisions, Congress has mandated a progressive, incremental, 'stairstep' approach to punishment of

-10-

repeat offenders." Blackwood, 913 F.2d at 147.

In Beckstrom's case, the court imposed a mandatory life sentence based on two prior convictions: a state conviction for possession of dangerous drugs for sale and a federal conviction for CCE. The state conviction arose from Beckstrom's possession of methamphetamine on or about December 12, 1989. Beckstrom pled guilty to the charge and was sentenced to five years' imprisonment. The indictment for the federal charge alleged that Beckstrom engaged in a continuing criminal enterprise from May 1989 to August 1990. Beckstrom pled guilty to that charge pursuant to a written plea agreement in which he stipulated that the government would be able to prove: (1) on May 10, 1989, Nevada Highway Patrol stopped a vehicle occupied by Beckstrom and two other individuals and discovered methamphetamine; (2) Beckstrom possessed methamphetamine and methamphetamine manufacturing material in his home on December 13, 1989—the conduct giving rise to the state conviction; and (3) an associate of Beckstrom's admitted to dealing approximately two pounds of methamphetamine per week on behalf of Beckstrom from June 1989 to January 1990. Beckstrom was sentenced to five years on the federal charge.

Because the conduct underlying Beckstrom's state conviction was also a part of the continuing course of conduct for which he was convicted in federal court, Beckstrom contends that the two convictions arose from the same acts and thus constitute a single criminal episode. We considered a similar argument in Pace, in which a defendant had been previously convicted of five substantive drug offenses, and also of conspiracy to

-11-

manufacture, possess and distribute marijuana. 981 F.2d at 1131. The conspiracy charge alleged twenty overt acts, including the five instances charged separately as substantive drug offenses. Id. We rejected the argument that the five substantive drug convictions, which were based on conduct that occurred over a six-month period, constituted a single criminal episode merely "because the substantive offenses also were alleged as overt acts in support of the conspiracy." Id.

This case presents a distinct question from that answered in Pace. There, the substantive drug convictions used to support the § 841(b)(1)(A) mandatory sentence were clearly based on different acts occurring at distinct times. The defendant's argument was merely that these distinct convictions were "related" because they had also been charged as overt acts supporting his conspiracy conviction. Pace, 981 F.2d at 1131. Beckstrom is correct to observe that, unlike in Pace, his prior convictions are based on conduct that was not entirely distinct. His life sentence is based on a CCE conviction and a conviction for a substantive drug offense committed as part of the criminal enterprise—in other words, the conduct leading to his state conviction was also a part of the conduct that led to his federal conviction.

But the two prior convictions are not necessarily based on the same criminal episode simply because they arise from acts committed during the same criminal enterprise. Beckstrom's federal conviction required proof of at least two other "predicate offenses." See Garrett v. United States, 471 U.S. 773, 775 (1985) ("[T]hree predicate offenses . . . must be shown to make out a CCE violation."); United States v. Barajas-

-12-

Diaz, 313 F.3d 1242, 1244 (10th Cir. 2002) ("We have held . . . that the 'continuing series of violations' mentioned in this statute requires proof of three or more related violations."). But see Richardson v. United States, 526 U.S. 813, 818 (1999) ("We assume, but do not decide, that the necessary number [of drug crimes] is three . . . ."). And the two other predicate offenses that led to Beckstrom's CCE conviction were criminal episodes distinct in time from the episode resulting in his state conviction. In pleading guilty to CCE, Beckstrom stipulated that he was caught with methamphetamine on May 10, 1989, and that an associate sold methamphetamine on his behalf on numerous occasions between June 1989 and January 1990. These criminal episodes are plainly distinct from his possession of methamphetamine in his home on December 12 or 13, 1989. See Hughes, 924 F.2d at 1361 (holding conduct constituted separate criminal episodes because the "events occurred at distinct times spanning a nine-month period").

As the government argues, it would be a peculiar result if a defendant could escape § 841's mandatory sentence simply because he was charged with committing a series of crimes in a single count rather than being charged separately for each criminal act.

> An ongoing course of criminal conduct may involve many criminal episodes, each a discrete occurrence. The fact that all are related, part of a series, or part of a continuous course of criminal dealing, does not necessarily render them a "single" criminal episode, particularly where the episodes occur over time. To so hold would insulate the very career criminals the statute is designed to reach—those continuously engaged in criminal conduct.

-13-

Liquori, 5 F.3d at 437-38 (quotation and alterations omitted); see also Hughes, 924 F.2d at 1361 ("An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.").[2]

Importantly, Beckstrom could have ceased his drug-related activity after he was stopped with methamphetamine in May 1989 or after methamphetamine was seized from his home in December 1989. Cf. Hughes, 924 F.2d at 1362. He forwent that opportunity, and instead chose to engage in additional criminal activity. This is the very essence of a separate criminal episode.

In short we hold that a conviction arises from a separate criminal episode if it requires proof of: (1) a criminal act separate from the acts supporting the first conviction, (2) which occurred at a distinct time from the acts supporting the first conviction, and (3) which occurred after the defendant had a meaningful opportunity to discontinue his unlawful drug-related activity. Beckstrom's convictions satisfy this test.

### C

Lastly, Beckstrom argues that § 841(b) is unconstitutional because it allows prior convictions to be used to increase a statutory maximum sentence without a jury finding that the convictions occurred. In Almendarez-Torres v. United States, 523 U.S. 224

---

[2] Nevertheless, a single CCE conviction, standing alone, could not support a mandatory life sentence under § 841(b)(1)(A) because the statute requires two prior convictions.

(1998), the Court held that a prior conviction which increases a defendant's statutory maximum sentence is not an element of the crime that must be alleged in the indictment and proven to a jury. Id. at 226-27. Two years later, Justice Thomas—one of the members of the five-Justice majority in Almendarez-Torres—characterized his vote in that case as an "error." Apprendi v. New Jersey, 530 U.S. 466, 520 (2000) (Thomas, J., concurring). Beckstrom notes that in light of Justice Thomas' changed position it is now possible that a majority of the Court holds the view that the Constitution requires any prior conviction that increases a statutory maximum sentence to be found by a jury.

Nevertheless, Almendarez-Torres has not been overruled. Accordingly, Beckstrom's argument is doomed in this court. See United States v. Apperson, 441 F.3d 1162, 1213 (10th Cir. 2006) ("[T]he Supreme Court has consistently held . . . that a prior felony conviction is a sentencing factor and thus does not need to be pled in the indictment or be decided by a jury." (citation omitted)). He concededly raises the issue only to preserve Supreme Court review.

### III

For the foregoing reasons, Beckstrom's conviction and sentence are

**AFFIRMED**.[3]

---

[3] Beckstrom's motion to file a supplemental pro se brief is denied. See Fed. R. App. P. 28 (permitting an appellant to file an opening brief and a reply brief).